# Illinois Official Reports

## Appellate Court

---

### *People v. Valdez*, 2015 IL App (3d) 120892

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSUE VALDEZ, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0892 |
| Filed<br>Modified upon denial<br>of rehearing | May 19, 2015<br><br>August 19, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Bureau County, No. 12-CF-40; the Hon. Marc P. Bernabei, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | Santiago A. Durango (argued), of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Geno J. Caffarini, State's Attorney, of Princeton (Laura E. DeMichael (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice Holdridge dissented, with opinion.

**OPINION**

¶ 1     Defendant, Josue Valdez, was a noncitizen who pled guilty to burglary predicated upon theft (720 ILCS 5/19-1(a) (West 2012)). He filed a timely motion to withdraw his guilty plea, claiming his counsel provided him ineffective assistance of counsel by failing to advise him that he would be deported as a result of his plea, in violation of the holding in *Padilla v. Kentucky*, 559 U.S. 356 (2010). The trial court denied the motion, finding that counsel's advice was deficient but that defendant was not prejudiced because the court admonished defendant that his plea may have adverse immigration consequences. Defendant appeals. We conclude that the immigration consequences of defendant's plea were clear and that counsel failed to meet his duty to advise defendant of those consequences. Counsel's deficiencies prejudiced defendant, and that prejudice was not cured by the court's admonishments. Therefore, we vacate the judgment and remand for further proceedings.

¶ 2                                   FACTS

¶ 3     Defendant–a noncitizen from the Dominican Republic married to a United States citizen–was charged with burglary (720 ILCS 5/19-1(a) (West 2012)) for entering a building with the intent to commit theft after he allegedly took a ring and earrings from a neighbor's unoccupied building. The trial court appointed counsel and an interpreter. At a pretrial hearing, counsel expressed his difficulty explaining to defendant that counsel represented him in his criminal matter only, not in his ongoing divorce. In addition, counsel stated:

> "It appears that he is also–an [Immigrations and Customs Enforcement] hold on my client and he may have immigration issues as well, which I also do not represent him on.
>
> So it appears to me that [defendant] has three different and distinct legal problems, and I'm trying to help my client to understand that I'm here on one of those three different legal problems. I don't think it's any secret that I'm not involved in the divorce in this matter. I don't represent him on immigration issues, other than to advise him–
>
> THE COURT: Of a conviction.
>
> COUNSEL: Yes."

The court granted a recess for counsel to speak with defendant.

¶ 4     When the pretrial hearing came back on the record, the parties announced that they had reached a plea agreement, under which defendant would plead guilty to burglary–a Class 2

felony–and receive a sentence of four months in the county jail, followed by three years' probation. The court admonished defendant about the charge and potential penalties in accordance with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012).

¶ 5    The court further admonished defendant in accordance with section 113-8 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-8 (West 2012)):

"THE COURT: If you were not a citizen of the United States, you are hereby advised that a conviction of the offense for which you have been charged, the burglary charge, may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Are you completely satisfied with the way that [defense counsel] has represented you?

THE DEFENDANT: Yes.

THE COURT: Do you have any complaints to make about his work in this case?

THE DEFENDANT: No. Everything has been fine."

¶ 6    The State presented a factual basis, stating that, if the cause were to proceed to trial, the State would provide evidence that Keith Peterson discovered that his class ring and a pair of his wife's earrings were missing from their house, which had sat uninhabited for a month. Further evidence would show that defendant was in possession of the ring and earrings and that defendant admitted to entering the Petersons' building and taking the property.

¶ 7    When the court asked defendant whether anyone was forcing him to plead guilty, defendant responded:

"THE DEFENDANT: They used it against me, yes. They used it against me because they threatened me with deportation.

THE COURT: Who did?

THE DEFENDANT: The–my wife's dad and grandpa. And he pushed my wife so that she would do the same.

* * *

THE COURT: Okay. I can't accept the guilty plea if you're being forced to do it. I can only accept a guilty plea if you want to do it.

THE DEFENDANT: I have to accept it.

THE COURT: Okay.

THE DEFENDANT: Because I don't have any possibility of winning the case since my wife is being forced here and her father to do certain things. She is the one who took me to that property to see some animals.

THE COURT: How are they making you plead guilty instead of pleading not guilty and having a trial?

THE DEFENDANT: Because you're telling me I have to–they're going to deport me to the Dominican Republic.

THE COURT: Who is telling you that? Who is telling you they're going to deport you?

- 3 -

THE DEFENDANT: Because I have–well, because I won't agree to the divorce. Two days is when I–when I got papers for a divorce.

THE COURT: What does that have to do with whether or not you plead guilty or not guilty to this charge of burglary?

THE DEFENDANT: Because on the theft case, my wife knew that I never touched anything belonging to anyone. Everything that I used, it's with the sweat of my own body.

THE COURT: Okay. Do you want to plead guilty to this charge or do you want to have a trial where–

THE DEFENDANT: I can't go to a trial because I don't have the money to pay an attorney.

THE COURT: You have a free lawyer. He doesn't cost you any money. He is free.

THE DEFENDANT: Yes, but–but the attorney is good and I feel very good and I am very appreciative of everything he has done for me. But it's not the same to pay an attorney that is going to look for all the information of what I need to win the case.

THE COURT: Well, if anybody is forcing you to plead guilty today against your will, then we have to stop right now and we'll just go to trial on the scheduled date of August 27.

THE DEFENDANT: No, I want to accept because–for myself. Because with God, I will get through the problem and I'll leave it behind me.

THE COURT: Okay. But I have to ask you again, then: Are you pleading guilty because that's what you decided that you want to do, or are you doing it because you feel like you're being forced against your will to do it?

THE DEFENDANT: It's because I have decided to do it.

THE COURT: Okay. So let me ask you again: Is anybody forcing you to plead guilty? Because you have a right to plead not guilty and to have a trial to decide whether or not you're guilty. You're not required to plead guilty. You have a right to do that and you have a right to make this deal, but you also have a right not to do it, and I just want to know what you want to do.

THE DEFENDANT: I want to have the opportunity to get out and go back into my career, and a month ago I can come back and fight the case and pay an attorney. Everything will be very different because that attorney would have all the information that they need.

THE COURT: Okay. Well, first of all, you have a very good attorney.

Secondly, these proceedings today are done. There will be no guilty plea because he is telling me he is being forced.

THE DEFENDANT: No, no. I want–everything is fine. I don't want you to stop.

THE COURT: Well–

THE DEFENDANT: I am guilty.

THE COURT: You just told me that you wanted to get out so you could fight the case. You're not going to be able to do that if you plead guilty. Once you plead guilty, the case is over.

THE DEFENDANT: Well, that's fine, then. I want the case to be over. I need to move on.

THE COURT: So do you want to keep going today with this deal?

THE DEFENDANT: Yes.

THE COURT: So is anybody forcing to you [*sic*] do it or are you doing it because you want to do it?

THE DEFENDANT: It's because I want to do it.

THE COURT: Are you being forced to do it?

THE DEFENDANT: I can't go back. I have to go forward. Everything has been correct.

THE COURT: I told you that if you're found guilty–and one way that you could be found guilty is if you plead guilty–I've told you that you could be deported from the country. That's not up to me. It's up to the federal government. And I don't know if they would do it or not, but only they can do it. Your wife can't do it as a result of this conviction, but you told me you understood that, if you plead guilty, they could deport you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you still want to go forward?

THE DEFENDANT: Yes, I want to go forward."

The court accepted defendant's guilty plea and the terms of the plea agreement.

¶ 8        Within 30 days of entering his plea, defendant filed a *pro se* motion to "open and vacate" his conviction. The court treated that filing as a motion to withdraw defendant's guilty plea and appointed new counsel for defendant. Counsel filed an amended motion to withdraw the guilty plea, arguing that the guilty plea was involuntary due, in part, to the erroneous advice of counsel. In addition, defendant claimed that he was innocent of the charged conduct, alleging that he found the jewelry in a gas station parking lot and did not take it from the Petersons' building. Defendant argued that the police investigation reports would support defendant's claim that he found the jewelry rather than took it from the Petersons. In addition, defendant argued that counsel was ineffective for advising him to stipulate to an erroneous set of facts at the guilty plea hearing.

¶ 9        A hearing was held on the amended motion to withdraw defendant's guilty plea. Defendant testified that he never admitted to taking the jewelry from the Petersons' building but rather found the property in a gas station parking lot. The State introduced a police report of Bureau County Deputy Sheriff Eric Barnes. The report stated that defendant's wife, Jenny Valdez, had discovered defendant in possession of a class ring with Keith Peterson's name on it and a pair of earrings. Jenny told police that defendant stated that he found the jewelry in a gas station parking lot. Jenny told defendant to return the property to Peterson. Barnes investigated the theft, and defendant told Barnes that he found the property in a parking lot. Defendant told Barnes that he returned the ring to Peterson.

¶ 10       The court found that guilty plea counsel failed to inform defendant about the possibility of deportation: "[i]t never came up for discussion between the two of them based on the uncontradicted evidence here." As a result, the court concluded that counsel provided deficient performance under the first prong of *Strickland v. Washington*, 466 U.S. 668 (1984). However,

the court found that its own admonishments cured counsel's deficiency, and therefore defendant suffered no prejudice under *Strickland*. The trial court explained:

> "It makes little sense to suggest that he wouldn't have pled guilty had [defense counsel] told him about it when the court clearly and more than once told him about it, and yet he insisted, after hearing it directly from the judge himself, that he wanted to go forward. It would make little sense to suggest that in the face of what happened at the guilty plea proceedings, to suggest that he wouldn't have pled guilty if his lawyer would have told him the same thing that the judge told him not once but twice."

The court denied defendant's motion to withdraw his guilty plea. Defendant appeals.

¶ 11                                                    ANALYSIS

¶ 12        Defendant appeals from the circuit court's denial of his motion to withdraw his guilty plea. A challenge to a guilty plea alleging ineffective assistance of counsel is subject to the standard set forth in *Strickland* (*id.*). *People v. Hall*, 217 Ill. 2d 324 (2005). Under that familiar standard, defendant must establish: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability that the outcome of the proceedings would have been different absent counsel's errors. *Strickland*, 466 U.S. 668. Both prongs of *Strickland* involve mixed questions of fact and law that we review under a dual standard of review: the court's factual findings are reviewed against the manifest weight of the evidence, while the ultimate decision whether counsel was ineffective is reviewed *de novo*. *People v. Coleman*, 2015 IL App (4th) 131045, ¶¶ 61-67.

¶ 13                                          I. Deficient Performance

¶ 14        In *Padilla*, 559 U.S. 356, the Supreme Court of the United States unambiguously held that the sixth amendment right to effective assistance of counsel announced in *Strickland*, 466 U.S. 668, extends to advice about the potential deportation risks that may accompany a criminal defendant's conviction. The Court held that "[i]t is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.' " *Padilla*, 559 U.S. at 371 (quoting *Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (White, J., concurring, joined by Stevens, J.)).

¶ 15        *Padilla* established a two-tiered standard for determining counsel's duty to advise about immigration consequences. Where the immigration consequences of a defendant's plea are "unclear or uncertain," counsel need do no more than advise her client that the plea "may carry a risk of adverse immigration consequences." *Id.* at 369. In contrast, where the immigration consequences of a particular plea are "succinct, clear, and explicit," counsel must advise the client of those specific consequences. *Id.* at 368.

¶ 16        A conviction for burglary predicated upon theft potentially exposed defendant to deportation under two subsections of section 1227 of the Immigration and Nationality Act (Act) (8 U.S.C. § 1227 (2012)).[1] First, section 1227(a)(2)(A)(iii) provided that an alien convicted of an aggravated felony at any time after admission is deportable.

---

[1]In response to the State's petition for rehearing, we have removed any reference to *residential* burglary, as defendant was charged with simple burglary. This modification does not affect our analysis and merely corrected a scrivener's error.

8 U.S.C. § 1227(a)(2)(A)(iii) (2012). Second, section 1227(a)(2)(A)(i) stated that an alien convicted of a "crime involving moral turpitude" within five years of admission to the United States "is deportable." 8 U.S.C. § 1227(a)(2)(A)(i) (2012). We address those subsections in turn.

¶ 17                               A. Aggravated Felony

¶ 18    The federal immigration statutes define an aggravated felony as, *inter alia*, a theft or burglary offense "for which the term of imprisonment [*sic*] at least one year." 8 U.S.C. § 1101(a)(43)(G) (2012). The term of imprisonment referenced in that subsection is the term actually imposed, not the statutorily available sentence. *United States v. Guzman-Bera*, 216 F.3d 1019, 1021 (11th Cir. 2000). Here, defendant was sentenced to less than one year of imprisonment. Therefore, his conviction did not qualify as an aggravated felony.

¶ 19                          B. Crime Involving Moral Turpitude

¶ 20    Section 1227(a)(2)(A)(i) of the Act makes an alien deportable who has been convicted of a "crime involving moral turpitude" (CIMT) within five years of admission to the United States. 8 U.S.C. § 1227(a)(2)(A)(i) (2012). However, unlike the aggravated felony subsection, the statutory language of the CIMT subsection does not define a "crime involving moral turpitude." To determine whether defendant's conviction was a CIMT, we must consult federal case law.

¶ 21    Moral turpitude is a notoriously difficult phrase to define. See *Jordan v. De George*, 341 U.S. 223, 239 (1951) (Jackson, J., dissenting). However, it is generally defined as "conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *In re Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999) (*per curiam*).

¶ 22    Although determining whether a crime is a CIMT can be a difficult exercise, in the present case it was clear that a conviction for burglary predicated upon theft was a CIMT. The federal case law is in agreement that crimes involving theft are CIMTs. See, *e.g.*, *United States v. Esparza-Ponce*, 193 F.3d 1133, 1336 (9th Cir. 1999) (theft is a CIMT); *In re Lopez-Meza*, 22 I. & N. Dec. 1188, 1193 (BIA 1999) (including theft in a list of CIMTs); *In re Frentescu*, 18 I. & N. Dec. 244, 245 (BIA 1982) (superseded by statute on other grounds) (burglary with intent to commit theft is a CIMT); *In re De La Nues*, 18 I. & N. Dec. 140, 145 (BIA 1981) (burglary and theft are CIMTs); but see *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1112 (9th Cir. 2011) (commercial burglary not necessarily a CIMT). Therefore, with minimal research beyond the text of the immigration statute, counsel could have determined with clarity that defendant's conviction made him deportable.

¶ 23    The State argues that the immigration consequences of a conviction are never clear when the text of the immigration statute itself does not explicitly declare a conviction deportable. See, *e.g.*, *State v. Ortiz-Mondragon*, 2014 WI App 114, ¶¶ 12-13, 358 Wis. 2d 423, 856 N.W.2d 339; *Lopez-Penaloza v. State*, 804 N.W.2d 537, 544-46 (Iowa Ct. App. 2011). The State correctly points out that in *Padilla*, counsel could have determined that the plea made the defendant deportable "simply from reading the text of the statute." *Padilla*, 559 U.S. at 368. Although the question whether burglary qualified as a CIMT was not apparent merely from

reading the text of the statute, we conclude that the answer was nevertheless clear from a minimal investigation of the case law. Counsel therefore had a duty to advise defendant that, by pleading guilty, deportation was "presumptively mandatory." *Id.* at 369.

¶ 24 In the present case, counsel failed to meet his duty under *Padilla*. After a hearing on the motion to withdraw, the court found that counsel failed to give defendant *any* advice about the deportation consequences of his plea. Counsel's performance therefore fell well below the constitutional threshold. Counsel provided deficient performance under the first prong of *Strickland*.

¶ 25 <center>II. Prejudice Under *Strickland*</center>

¶ 26 To establish a viable claim of ineffective assistance of counsel, defendant must also show that he suffered prejudice as a result of his attorney's constitutionally deficient performance. Prejudice is defined as a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In the context of a guilty plea, defendant must show that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *People v. Hughes*, 2012 IL 112817, ¶ 63. Establishing prejudice requires more than a " 'bare allegation' " that defendant would have rejected the plea and proceeded to trial. *Id.* ¶ 64 (quoting *Hall*, 217 Ill. 2d at 335). Rather, defendant must assert either (1) a claim of actual innocence, or (2) a plausible defense that could have been raised at trial. *Id.* The question of prejudice depends in large part on predicting whether the defendant would have been successful at trial. *Hall*, 217 Ill. 2d at 336.

¶ 27 In the present case, defendant argues that he was unaware that deportation was a presumptively mandatory result of his guilty plea. According to defendant, had he known of those specific immigration consequences, he would have pled not guilty and proceeded to trial, in the hopes of avoiding deportation. Additionally, defendant argues that there was a reasonable probability that he would have succeeded at trial because he was actually innocent of the charge.

¶ 28 We agree that defendant has established a reasonable probability that, had he been advised that his guilty plea mandated deportation, he would have pled not guilty and proceeded to trial. In support of that finding, we note that in his motion to withdraw his guilty plea, defendant raised a claim of actual innocence, alleging that he found the jewelry rather than took it from the Petersons' building. In addition, during his plea colloquy, defendant's confused statements seemed to imply that he was pleading guilty in order to *avoid* deportation and that he felt forced into pleading guilty. Under these facts, we find that defendant established a reasonable probability that, had he known that deportation was "practically inevitable" (*Padilla*, 559 U.S. at 364), he would have rejected the guilty plea and proceeded to trial.

¶ 29 The State argues that any prejudice that defendant might have suffered was cured by the court's admonishments under section 113-8 of the Code (725 ILCS 5/113-8 (West 2012)). That statute requires the court to recite the following warning to a defendant prior to accepting a guilty plea:

> " 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " *Id.*

In the present case, the court admonished defendant under section 113-8 prior to accepting his guilty plea.

¶ 30　　The State is correct that a trial court's admonishments can serve to cure the prejudice resulting from defense counsel's erroneous advice. See, *e.g.*, *People v. Ramirez*, 162 Ill. 2d 235 (1994); *People v. Jones*, 144 Ill. 2d 242 (1991). In the present case, however, the section 113-8 admonishment did not cure counsel's deficiencies.

¶ 31　　The section 113-8 admonishment mirrors the advice counsel is required to give under *Padilla* when the immigration consequences of the conviction are not clear. *Padilla*, 559 U.S. at 369 (requiring counsel to advise that the conviction "may carry a risk of adverse immigration consequences"). If the deportation consequences of defendant's conviction had been unclear in the present case, the section 113-8 admonishment would likely have been sufficient to cure any prejudice.

¶ 32　　However, where, as here, the consequences were "truly clear" (*id.*), counsel had a duty to advise of those *specific* consequences. The section 113-8 admonishments are generic to every guilty plea and, by definition, do not warn of the specific consequences of a particular conviction. Nor does section 113-8 warn against the definitive nature of those consequences. In defendant's case, deportation was presumptively mandatory; section 113-8 warns only that nebulous immigration consequences " 'may' " occur. 725 ILCS 5/113-8 (West 2012). As a result, the court's section 113-8 admonishments were insufficient to cure the prejudice suffered by defendant.

¶ 33　　Although in *Padilla* the Court was not tasked with determining whether the defendant suffered prejudice, the thrust of the opinion established that the failure of defense counsel to advise about immigration consequences can be prejudicial. In so doing, the *Padilla* Court declined to designate immigration consequences as either direct or collateral to a conviction: "The collateral versus direct distinction is thus ill suited to evaluating a *Strickland* claim concerning the specific risk of deportation." *Padilla*, 559 U.S. at 366. Therefore, Illinois courts' continued reliance on the collateral versus direct distinction in other contexts does not preclude immigration consequences from being considered in the context of prejudice as it relates to ineffective assistance under the sixth amendment. *Cf. People v. Carrera*, 239 Ill. 2d 241 (2010) (holding that deportation is not a direct consequence of a guilty plea for purposes of the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2006))). That is, whether Illinois courts continue to describe deportation as a direct or a collateral consequence is irrelevant to determining whether a defendant received effective assistance of counsel.

¶ 34　　Defendant established that his plea was involuntary because he received ineffective assistance of counsel. As a result, the court erred by denying his motion to withdraw his guilty plea.

¶ 35　　Lastly, the majority disavows the commentary contained in the dissent. *Infra* ¶¶ 43-44.

¶ 36　　　　　　　　　　　　　　　　CONCLUSION

¶ 37　　The judgment of the circuit court of Bureau County is vacated, and the cause is remanded for further proceedings.

¶ 38　　Vacated and remanded.

¶ 39    JUSTICE HOLDRIDGE, dissenting.

¶ 40    I dissent. In *Padilla*, the United States Supreme Court held that the sixth amendment requires a criminal defense attorney to warn his client of the specific immigration consequences of a guilty plea only when those immigration consequences are "succinct, clear, and explicit." *Padilla*, 559 U.S. at 368; see *supra* ¶ 15. Where the immigration consequences of a defendant's plea are "unclear or uncertain" (*i.e.*, when "the law is not succinct and straightforward"), counsel need only advise her client that the plea "may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369; see *supra* ¶ 15. Applying these rules, the majority concludes that the defendant's counsel was required to advise him that a guilty plea would trigger "presumptively mandatory" deportation because: (1) section 1227(a)(2)(A)(i) of the Immigration and Nationality Act (Act) provides that an alien who has been convicted of a "crime involving moral turpitude" within five years of admission to the United States is deportable (8 U.S.C. § 1227(a)(2)(A)(i) (2012)); and (2) a "minimal investigation of the [relevant] case law" would have revealed that the burglary offense to which the defendant pled guilty was a crime involving moral turpitude. *Supra* ¶¶ 20-23.

¶ 41    I disagree. In my view, it is not clear that the defendant's burglary conviction would render him presumptively deportable. As the majority acknowledges, section 1227(a)(2)(A)(i) of the Act does not define a "crime involving moral turpitude," and "[m]oral turpitude" is a "notoriously difficult phrase to define." (Internal quotation marks omitted.) *Supra* ¶¶ 20-21. Justice Alito stressed this point in his special concurrence in *Padilla*. See *Padilla*, 559 U.S. at 378 (Alito, J., concurring, joined by Roberts, C.J.) (noting that "determining whether a particular crime is *** a crime involving moral turpitude *** is not an easy task" and that "moral turpitude" is a "term[ ] of art" that "evades precise definition" (internal quotation marks omitted)). Justice Alito concluded that the *Padilla* majority's requirement that defense counsel advise his client of the specific immigration consequences of a guilty plea was "problematic" because "[m]ost crimes affecting immigration status are not specifically mentioned by the [Act], but instead fall under a broad category of crimes, such as *crimes involving moral turpitude*." (Emphasis in original and internal quotation marks omitted.) *Id*. at 377-78.

¶ 42    Responding to Justice Alito's concerns, the *Padilla* majority noted that, in the case before it, "the terms of the relevant immigration statute [were] succinct, clear, and explicit in defining the removal consequence for Padilla's conviction" and that "Padilla's counsel could have easily determined that his plea would make him eligible for deportation *simply from reading the text of the statute*," which addressed "*not some broad classification of crimes*" but "specifically command[ed] removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." (Emphases added.) *Id.* at 368 (majority opinion).[2] Because "the consequences of Padilla's plea could easily be determined from reading the removal statute" and his deportation was "presumptively mandatory," the *Padilla* Court held that Padilla's attorney rendered ineffective assistance of counsel by failing to advise

---

[2]The removal statute at issue in *Padilla* provided that "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ***, other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i) (2012).

- 10 -

*Padilla* of these specific immigration consequences. *Id.* at 369. However, the Court noted that, "[w]hen the law is not succinct and straightforward (*as it is in many of the scenarios posited by Justice ALITO*), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." (Emphasis added.) *Id.*

¶ 43    In sum, *Padilla* requires defense counsel to warn of the specific immigration consequences of a guilty plea only when the relevant removal statute clearly mandates those specific consequences for aliens convicted of the particular offense to which the defendant pleads guilty. When the removal statute at issue addresses not a particular offense but rather a "broad classification of crimes" (such as "crimes of moral turpitude"), defense counsel need only advise his client that a guilty plea "may carry a risk of adverse immigration consequences." Thus, in this case, *Padilla* required the defendant's counsel to give only the latter, more general type of warning.

¶ 44    However, even assuming *arguendo* that *Padilla* mandates a more specific warning when case law clearly indicates that the charged offense is a "crime of moral turpitude," such is not the case here. The defendant pleaded guilty to burglary predicated upon theft (720 ILCS 5/19-1(a) (West 2012)). The statute under which the defendant was charged defines "burglary" as the entering of a building, without authority, "with intent to commit therein a felony or theft." *Id.* This statute does not require that the building at issue be a residence. Thus, the defendant was not charged with or convicted of residential burglary. Moreover, theft or the intent to commit theft is not a necessary element of the charged offense because the statute criminalizes the unauthorized entry into a building with the intent to commit *either* a theft *or* any other "felony." *Id.* Thus, even if federal case law clearly establishes that theft and residential burglary are "crimes of moral turpitude" (as the majority asserts), it is not clear that the particular offense charged in this case was a "crime of moral turpitude." See, *e.g.*, *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1105-12 (9th Cir. 2011) (holding that defendant's conviction for burglary was not a "crime of moral turpitude" where the elements of the charged offense did not involve the burglary of a residence).

¶ 45    In my view, the defendant's counsel in this case was only required to warn the defendant that a guilty plea "may carry a risk of adverse immigration consequences." Although counsel erroneously failed to provide such a warning, the trial court provided a substantively identical warning when it advised the defendant (pursuant to section 113-8 of the Code (725 ILCS 5/113-8 (West 2012))) that "[i]f you [are] not a citizen of the United States, *** a conviction of the offense for which you have been charged, the burglary charge, may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States." The defendant indicated that he understood these admonishments. As the majority correctly notes, such admonishments can cure the prejudice resulting from defense counsel's erroneous advice. See, *e.g.*, *People v. Ramirez*, 162 Ill. 2d 235 (1994); *People v. Jones*, 144 Ill. 2d 242 (1991); see *supra* ¶ 30. The majority acknowledges that, because "[t]he section 113-8 admonishment mirrors the advice counsel is required to give under *Padilla* when the immigration consequences of the conviction are not clear," the admonishment given by the trial court in this case "would likely have been sufficient to cure any prejudice" if the deportation consequences of the defendant's conviction were unclear. *Supra* ¶ 31. I agree. As shown above, I believe that the deportation consequences of the defendant's conviction were unclear. Thus, in my view, the trial court's admonishment cured

- 11 -

any prejudice stemming from defense counsel's failure to warn of the potential immigration consequences resulting from the defendant's guilty plea. Because the defendant cannot demonstrate any prejudice caused by his counsel's deficient performance, he cannot demonstrate ineffective assistance of counsel under *Strickland* or *Padilla.* I would therefore affirm the trial court's judgment.

¶ 46  I also disagree with two other aspects of the majority's analysis. Citing *People v. Hughes*, 2012 IL 112817, ¶ 63 (which relied upon *People v. Hall*, 217 Ill. 2d 324, 335 (2005)), the majority states that, in order to establish that he was prejudiced by his counsel's failure to admonish him of the potential immigration consequences of his guilty plea, a defendant "must assert" either "a claim of actual innocence" or "a plausible defense that could have been raised at trial." *Supra* ¶ 26.

¶ 47  I disagree. While a claim of innocence or the apparent existence of a plausible trial defense may make a defendant's showing of prejudice stronger, neither is *required* in order to show prejudice in cases involving counsel's failure to advise a defendant as to the immigration consequences of his guilty plea. Such a requirement makes sense in other contexts. For example, if a defendant claims that his counsel provided ineffective assistance by failing to discover exculpatory evidence or by failing to inform the defendant of a possible defense before inducing him to plead guilty (as in *Hall*), the prejudice to the defendant, if any, will depend on whether the presentation of the undiscovered evidence or the assertion of the affirmative defense at issue could have resulted in an acquittal at trial. See *Hall*, 217 Ill. 2d at 335-36; *Hill*, 474 U.S. at 59. However, that is not the case when counsel fails to advise a defendant of the risks of deportation, because the defendant may suffer prejudice in that instance regardless of the strength of his case at trial. As noted, to show prejudice in such cases, the defendant is only required to show that a decision to reject the plea bargain would have been "rational under the circumstances." *Padilla*, 559 U.S. at 372. A defendant facing potential deportation may show that his decision to reject a plea offer and go to trial would have been "rational" without showing that he would likely have succeeded at trial. See, *e.g.*, *Orocio*, 645 F.3d at 643 (ruling that, under *Padilla*, a "rational" decision not to plead guilty "does not focus solely on whether a defendant would have been found guilty at trial"). As the *Padilla* Court recognized, preserving a noncitizen defendant's right to stay in the United States may be more important to the defendant than a potential sentence of imprisonment. *Padilla*, 559 U.S. at 368. See, *e.g.*, *Orocio*, 645 F.3d at 645. A defendant who fears deportation more than he does imprisonment might rationally choose to risk a lengthier prison sentence in exchange for even a slight chance of prevailing at trial and thereby avoiding deportation. Counsel's failure to advise his client of the risk of deportation prejudices the defendant by depriving him of that chance. Under such circumstances, it would be inappropriate and overly burdensome to require the defendant to show that he would have succeeded at trial in order to establish prejudice.[3]

¶ 48  In addition, the majority notes that "whether Illinois courts continue to describe deportation as a direct or a collateral consequence is irrelevant to determining whether a defendant received effective assistance of counsel." *Supra* ¶ 33. While I agree with that

---

[3]The First District of our appellate court has reached the opposite conclusion. See *People v. Gutierrez*, 2011 IL App (1st) 093499, ¶ 45. However, I find the *Gutierrez* court's analysis of this issue contrary to *Padilla* and I would therefore decline to follow *Gutierrez*.

statement in the abstract, it appears to be based on an erroneous assumption that Illinois courts may continue to treat deportation as a "collateral consequence" after *Padilla*. As I explained in my separate opinion in *People v. Guzman*, 2014 IL App (3d) 090464, ¶¶ 64-72 (Holdridge, J., concurring in part and dissenting in part), *Padilla* forecloses state courts from treating deportation as a collateral consequence.

¶ 49    One final point bears mentioning. As noted above, under *Padilla*, the scope of an attorney's obligations to warn his or her client of potential immigration consequences depends upon whether those immigration consequences are "succinct, clear, and explicit." *Padilla*, 559 U.S. at 368. If so, counsel must advise the client of those specific consequences. *Id.* If not, counsel is only required to advise his or her client that the guilty plea "may carry a risk of adverse immigration consequences." *Id.* at 369. However, we live in a time when the President and the Attorney General of the United States, by their statements and actions, have asserted that the executive branch's "enforcement discretion" includes the authority to decline to follow statutes and case law requiring deportation for entire classes of people. If this is true, (*i.e.*, if the President and the Attorney General have the unbridled discretion to disregard immigration law as they see fit), then the immigration consequences flowing from a guilty plea will never be "clear" or "explicit," even if they are clearly and explicitly mandated by immigration statutes. Any conclusion based upon a review of the positive law will always be tentative, provisional, and subject to the whims of the executive branch. Thus, under *Padilla*, an attorney would arguably never be required to provide more than a general warning that a guilty plea "may carry a risk of adverse immigration consequences."

¶ 50    I raise this issue merely to note the ways in which the executive branch's recent assertions of expansive discretionary authority over deportations might impact an attorney's obligations under *Padilla*. I do not purport to resolve this issue today. We, as jurists, are bound to base our decisions on the written law. Because the removal statute at issue in this case does not clearly establish that the crime to which the defendant pled guilty was a deportable offense, I dissent from the majority's judgment.