# Illinois Official Reports

## Supreme Court

---

### *People v. Valdez*, 2016 IL 119860

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOSUE VALDEZ, Appellee. |
| Docket No. | 119860 |
| Filed<br>Rehearing denied | September 22, 2016<br>November 21, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Bureau County, the Hon. Marc Bernabei, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago, and Geno Caffarini, State's Attorney, of Princeton (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and Lindsay Beyer Payne, Assistant Attorneys General, of Chicago, and Patrick Delfino, Terry A. Mertel, and Laura E. DeMichael Bailon, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.<br><br>Michael J. Pelletier, State Appellate Defender, Peter A. Carusona, Deputy Defender, and Santiago A. Durango, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee. |

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Josue Valdez, pleaded guilty to burglary in the circuit court of Bureau County and was sentenced to three years of probation. At the time of his plea, defendant was a citizen of the Dominican Republic and a resident alien of the United States based on his marriage to a United States citizen. During the plea hearing, the circuit court judge advised defendant that a burglary conviction "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States." Defendant indicated he understood the potential consequences of a burglary conviction on his immigration status and still wished to plead guilty.

¶ 2    Defendant later filed a motion to withdraw his guilty plea, alleging involuntariness and ineffective assistance of counsel. The circuit court denied defendant's motion. On appeal, defendant argued his attorney never warned him of the immigration consequences of pleading guilty to burglary, in violation of *Padilla v. Kentucky*, 559 U.S. 356 (2010). The appellate court agreed that defense counsel was ineffective and reversed the circuit court's judgment. 2015 IL App (3d) 120892, ¶¶ 23-24.

¶ 3    This court allowed the State's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. July 1, 2013). For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 4                                    BACKGROUND

¶ 5    In 2012, defendant was charged with burglary (720 ILCS 5/19-1(a) (West 2012)) for entering a building with the intent to commit a theft, after he allegedly took a ring and earrings from an unoccupied house in Sheffield, Illinois. The circuit court appointed a public defender and a Spanish-speaking interpreter for defendant.

¶ 6    At a pretrial hearing, the parties informed the court that they had reached a negotiated plea agreement. Under the agreement, defendant would plead guilty to burglary, a Class 2 felony. He would be sentenced to four months in the county jail, with credit for time served, followed by three years' probation.

¶ 7    The State presented a factual basis for the plea, which stated that, if the cause were to proceed to trial, the State would present evidence that Keith Peterson discovered that his class ring and a pair of his wife's earrings were missing from their house, which had sat uninhabited for a month. Further evidence would show that defendant was in possession of the ring and earrings and that defendant admitted to entering the Petersons' house.

¶ 8    The court admonished defendant about the charge and potential penalties in accordance with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). The court then admonished defendant, pursuant to section 113-8 of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-8 (West 2012)), that a burglary conviction "may have the consequences of deportation,

exclusion from admission to the United States, or denial of naturalization under the laws of the United States." Defendant stated that he understood these admonishments and still wished to plead guilty. Later in the proceedings, the judge admonished defendant that pleading guilty to burglary meant he "could be deported from the country," a decision that would be "up to the federal government." Defendant again acknowledged that he understood the potential immigration consequences and wanted to go forward with his guilty plea. The court accepted defendant's guilty plea and sentenced defendant as agreed to by the parties in the plea agreement.

¶ 9    Within 30 days of entering his plea, defendant filed a *pro se* motion to "open and vacate" his burglary conviction. The circuit court construed the motion as a motion to withdraw guilty plea and appointed new counsel for defendant. Defendant's new counsel filed a second amended motion to withdraw guilty plea and vacate sentence. The motion alleged, in part, that defense counsel failed to inform defendant of the consequences of his plea on his resident alien status.

¶ 10    Following a hearing, the circuit court denied defendant's motion to withdraw his plea. While the facts showed defense counsel never informed defendant that a burglary conviction might affect his immigration status, the court held any prejudice resulting from counsel's deficiency was cured by the court's own admonishments to defendant, *i.e.*, that his burglary conviction "may have the consequences of deportation."

¶ 11    A divided appellate court vacated the circuit court's order and remanded for further proceedings. 2015 IL App (3d) 120892. The majority held that defense counsel provided ineffective assistance by failing to inform defendant of the immigration consequences of his plea. According to the majority, under *Padilla v. Kentucky*, 559 U.S. 356 (2010), counsel had a professional duty to inform defendant that deportation resulting from his burglary conviction was "presumptively mandatory" under federal law. 2015 IL App (3d) 120892, ¶¶ 22-24. Thus, counsel's failure to inform defendant of any immigration consequences prior to pleading guilty fell below an objective standard of reasonableness. *Id.* Furthermore, the court held, defendant was prejudiced by counsel's deficient performance because he established a reasonable probability that he would have chosen to proceed to trial had he known he faced mandatory deportation. *Id.* ¶¶ 26-28.

¶ 12                                    ANALYSIS

¶ 13    At issue is whether defense counsel provided ineffective assistance when he failed to inform defendant, prior to defendant pleading guilty, that a burglary conviction subjected him to mandatory deportation from the United States. In *Padilla*, the United States Supreme Court held that an attorney's failure to correctly advise a defendant of the immigration consequences of a guilty plea is subject to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Padilla*, 559 U.S. at 366 ("[w]e conclude that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel").

¶ 14    Under the first prong of the two-part *Strickland* test, a defendant must demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To satisfy the second prong, a defendant must show that he was prejudiced as a result of counsel's deficient performance. *Id.* at 687. A showing of prejudice requires proof of a reasonable probability that, but for counsel's errors, the result of the proceedings would have

been different. *Id.* at 694. Both parts of the *Strickland* test must be satisfied to succeed on a claim of ineffective assistance of counsel. *People v. Flores*, 153 Ill. 2d 264, 283 (1992).

¶ 15                                    I. Deficient Performance

¶ 16    In order to determine whether defendant has satisfied the first *Strickland* prong, we must first establish what professional duties were owed to defendant by his counsel. *Padilla* holds that defense counsel has a duty to give correct advice to a defendant about immigration consequences before the defendant enters a plea. *Padilla*, 559 U.S. at 367 ("[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation"). This holding applies to affirmative misadvice, as well as the failure to give any advice at all. *Id.* at 370 ("there is no relevant difference between an act of commission and an act of omission in this context" (internal quotation marks omitted)). Thus, prior to defendant entering a guilty plea, "[i]t is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation, and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.' " *Id.* at 371 (quoting *Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (White, J., concurring in the judgment, joined by Stevens, J.)).

¶ 17    In *Padilla*, defense counsel advised defendant, prior to his entering a guilty plea for transporting a large quantity of marijuana, that he "did not have to worry about immigration status since he had been in the country so long." (Internal quotation marks omitted.) *Id.* at 359. This advice was clearly incorrect, according to the Supreme Court. In fact, Padilla's drug conviction subjected him to mandatory deportation from the country. On the face of section 1227 of the Immigration and Nationality Act, the terms were "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Id.* at 359, 368 (" 'Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ***, other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.' " (quoting 8 U.S.C. § 1227(a)(2)(B)(i) (2006))).

¶ 18    The Court concluded, therefore, that defendant sufficiently alleged a constitutional deficiency based on his attorney's failure to provide accurate immigration advice. *Id.* at 368-69. In so holding, the Court observed:

> "Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, *which addresses not some broad classification of crimes but specifically commands removal* for all controlled substances convictions except for the most trivial of marijuana possession offenses. Instead, Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country. This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." (Emphasis added.) *Id.*

¶ 19    In response to concerns raised in the concurring opinion, the Court went on to address situations in which the law is not "succinct, clear, and explicit" in defining the immigration consequences of a particular crime (*id.* at 368):

> "Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or

- 4 -

federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. *When the law is not succinct and straightforward \*\*\*, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences*. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." (Emphasis added.) *Id.* at 369.

¶ 20    The case before us differs from *Padilla*, where the immigration consequences of the defendant's conviction were held to be "succinct, clear, and explicit" based on express language in the Immigration and Nationality Act. *Id.* at 368. Here, it is not clear on the face of the immigration statute that defendant's burglary conviction rendered him deportable. The Act does not identify burglary as a deportable offense. Instead, the Act sets forth general categories of offenses, including crimes involving moral turpitude (8 U.S.C. § 1227(a)(2)(A)(i) (2012)) and aggravated felonies (*id.* § 1227(a)(2)(A)(iii)), which may or may not include burglary.

¶ 21    The appellate court below held that defense counsel had a duty to research federal case law in order to determine whether defendant's conviction fit into any of these general categories. According to the appellate court, "minimal research" would have revealed that "burglary predicated upon theft" is clearly considered a "crime involving moral turpitude" (CIMT) in immigration law. 2015 IL App (3d) 120892, ¶ 22 (citing *United States v. Esparza-Ponce*, 193 F.3d 1133, 1136 (9th Cir. 1999) (theft is a CIMT), *In re Lopez-Meza*, 22 I. & N. Dec. 1188, 1193 (BIA 1999) (including theft in a list of CIMTs), *In re Frentescu*, 18 I. & N. Dec. 244, 245 (BIA 1982) (burglary with intent to commit theft is a CIMT), and *In re De La Nues*, 18 I. & N. Dec. 140, 145 (BIA 1981) (burglary and theft are CIMTs)).[1] Section 1227(a)(2)(A)(i) of the Act states that an alien convicted of a crime involving moral turpitude, committed within five years of the date of admission to the United States, "is deportable." 8 U.S.C. § 1227(a)(2)(A)(i) (2012). Based on this authority, the appellate court held defense counsel had a constitutional obligation to inform defendant that pleading guilty to burglary rendered his deportation "presumptively mandatory." 2015 IL App (3d) 120892, ¶ 23 (citing *Padilla*, 559 U.S. at 369).

¶ 22    We disagree that the immigration consequences of defendant's burglary conviction were "succinct, clear, and explicit." *Padilla* strongly suggests that where a crime falls within a "broad classification" of offenses, such as crimes involving moral turpitude, the law is not "succinct and straightforward." *Padilla*, 559 U.S. at 368-69.[2] Consequently, where the face of

---

[1]The appellate court held defendant's conviction did not qualify as an aggravated felony under the federal immigration statutes because defendant was sentenced to less than one year of imprisonment. See 8 U.S.C. § 1101(a)(43)(G) (2012) (defining an aggravated felony as, *inter alia*, a theft or burglary offense "for which the term of imprisonment [is] at least one year"). 2015 IL App (3d) 120892, ¶¶ 17-18.

[2]In describing situations "in which the deportation consequences of a particular plea are unclear or uncertain," the majority of the Court referred to "many of the scenarios posited by JUSTICE ALITO." *Padilla*, 559 U.S. at 369. In his concurring opinion, Justice Alito discussed at length the difficulty and complexity involved in determining whether a crime is classified as a crime involving moral turpitude. *Id.* at 377-79 (Alito, J., concurring in the judgment, joined by Roberts, C.J.) (arguing that defense

the statute does not succinctly, clearly, and explicitly indicate that a conviction subjects a defendant to mandatory deportation, counsel need only advise a defendant that his plea "may" have immigration consequences. *Id.* Moreover, even if we read *Padilla* as requiring a minimal review of the case law, federal authorities do not clearly answer whether defendant's burglary conviction, as defined by Illinois state law, is a crime involving moral turpitude.

¶ 23    First, there is no clear consensus in the federal courts about how to define a "crime involving moral turpitude." Neither the Immigration and Nationality Act nor the Code of Federal Regulations defines the term, nor do they list examples of crimes in this category. See *State v. Ortiz-Mondragon*, 866 N.W.2d 717, 727 (Wis. 2015) (citing *Padilla*, 559 U.S. at 361, and *id.* at 377-78 (Alito, J., concurring in the judgment, joined by Roberts, C.J.)). The term "moral turpitude" was intentionally left undefined by Congress and, thus, is open to interpretation by the Board of Immigration Appeals (Board) and the courts. *Jordan v. De George*, 341 U.S. 223, 233-34 (1951) (Jackson, J., dissenting, joined by Black and Frankfurter, JJ.); *Cabral v. Immigration & Naturalization Service*, 15 F.3d 193, 194-95 (1st Cir. 1994); see also *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1105 (9th Cir. 2011) (the Board must consider on a case-by-case basis which crimes involve moral turpitude).

¶ 24    Certain offenses are considered indisputably to be crimes involving moral turpitude, such as those entailing fraud or deceit (*Marin-Rodriguez v. Holder*, 710 F.3d 734, 738 (7th Cir. 2013)) or those involving a certain degree of "baseness or depravity," such as murder, rape, robbery, or kidnapping (internal quotation marks omitted) (*Ruiz-Lopez v. Holder*, 682 F.3d 513, 519 (6th Cir. 2012)). Burglary, by contrast, is not universally regarded as a CIMT in immigration law. The inquiry turns on multiple factors, including the elements of the burglary statute at issue. See *Judulang v. Holder*, 565 U.S. ___, ___, 132 S. Ct. 476, 485 (2011) ("minor burglar[ies]" are not CIMTs); *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1106-09 (9th Cir. 2011) (second-degree commercial burglary under California law is not a CIMT where the elements of the crime do not, on their face, require a theft); *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1019 (9th Cir. 2005) (acting as an accomplice to residential burglary, in violation of Washington law, is not a CIMT under categorical approach); but see *In re Frentescu*, 18 I. & N. Dec. 244, 245 (BIA 1982) (burglary with intent to commit a theft is a CIMT).

¶ 25    Because the term "crime involving moral turpitude" has no settled meaning in immigration law, the Board and the courts use various methodologies to determine whether a crime should be classified as a CIMT. "[D]etermining whether a particular crime is *** a 'crime involving moral turpitude [(CIMT)]' is not an easy task." *Padilla*, 559 U.S. at 378 (Alito, J., concurring in the judgment, joined by Roberts, C.J.). Currently, the federal circuit courts of appeals are split on which test is appropriate. Five circuits apply a two-step test consisting of a "categorical approach" and "modified categorical approach." *Ortiz-Mondragon*, 866 N.W.2d at 728-29 & nn.11-12 (and cases cited therein). As of 2013, two other circuits, including the Seventh Circuit, applied a sequential three-step test, which allows analysis of evidence outside the record of conviction when the first two approaches do not yield a definitive answer. See *id.*; *Marin-Rodriguez v. Holder*, 710 F.3d 734, 737-38 (7th Cir. 2013).[3]

_____

counsel has no affirmative obligation to advise a defendant about immigration consequences, only an obligation to correct erroneous advice).

[3]The three-step test has recently been called into question. In a 2015 opinion, the United States Attorney General acknowledged that several United States Supreme Court opinions had "cast doubt"

¶ 26    In light of the split of authority described above, we cannot agree that the immigration consequences of defendant's conviction were "succinct, clear, and explicit," so as to require a warning by counsel that deportation was presumptively mandatory. Unlike the straightforward application of the statute in *Padilla*, determining whether defendant's burglary charge, as defined by Illinois state law, is a CIMT requires extensive research of federal case law. Even then, there is no clear answer. Under these circumstances, we hold that counsel was required to give defendant only a general warning of the possibility of immigration consequences. See *Padilla*, 559 U.S. at 369 ("When the law is not succinct and straightforward *** a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.").

¶ 27    It is undisputed in this case that defendant received inadequate legal advice from counsel. The circuit court found that counsel gave defendant *no* advice about immigration consequences before entering his guilty plea. Thus, defendant has sufficiently alleged that his counsel's performance was constitutionally deficient under the first *Strickland* prong. See *id.* at 366, 369-71.

¶ 28                                    II. Prejudice

¶ 29    Whether defendant is entitled to relief as a result of counsel's deficient performance depends on whether he can demonstrate prejudice. In order to show prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To establish prejudice in the guilty plea context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *People v. Hughes*, 2012 IL 112817, ¶ 63. A conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice. *Hughes*, 2012 IL 112817, ¶ 64; *People v. Hall*, 217 Ill. 2d 324, 335 (2005). Rather, as the Supreme Court noted in *Padilla*, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)).

¶ 30    The State argues that any prejudice resulting from counsel's failure to advise defendant was cured by the circuit court's admonishments under section 113-8 of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-8 (West 2012)). This statute requires a trial court to give the following advisement to the defendant in open court before accepting a guilty plea: " 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " *Id.* In the proceedings below, after the circuit court gave the admonishments mandated by section 113-8, defendant acknowledged he understood them and stated that he wished to go forward with his plea. Therefore, the State argues, if counsel was only required to

---

on the three-step test and five circuit courts of appeals had explicitly rejected the test. *In re Silva-Trevino*, 26 I. & N. Dec. 550, 550, 552-53 (Att'y Gen. 2015) (vacating opinion in *In re Silva-Trevino*, 24 I. & N. Dec. 687 (Att'y Gen. 2008), which had adopted the three-step test as a universal test for the entire Board of Immigration Appeals).

advise defendant that pleading guilty "may have" the consequence of deportation, defendant cannot show he was prejudiced, as he had already received adequate advisements by the circuit court. We agree.

¶ 31    It is well established that admonishments by the circuit court can cure prejudice to a defendant resulting from counsel's incorrect advice. See *People v. Ramirez*, 162 Ill. 2d 235, 242-43, 245 (1994) (where defendant was properly admonished by the circuit court, defendant could not show that he pleaded guilty in reliance on alleged misrepresentations by his attorney that he would receive probation); *People v. Jones*, 144 Ill. 2d 242, 263 (1991) (circuit court's thorough questioning of defendant as to whether he understood the consequences of his plea contradicted defendant's claims that he pleaded guilty based on counsel's promise that he would not receive a death sentence).

¶ 32    Defendant cannot now argue that his counsel's failure to inform him of the immigration consequences of a guilty plea caused him to forgo a trial when the circuit court conveyed the same information to him and defendant still chose to plead guilty. See *id.* ("To accept the defendant's claim would require us to characterize the court's lengthy and exhaustive admonitions as merely a perfunctory or ritualistic formality; a characterization we are unwilling to make."). Any prejudice suffered by defendant as a result of counsel's failure was cured by the circuit court's strict compliance with section 113-8 of the Code. Accordingly, defendant has failed to establish he was prejudiced under *Strickland*, and the circuit court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea.

¶ 33    As a final matter, defendant raises two issues questioning defense counsel's competence for the first time in his brief to this court. First, he argues that he was prejudiced by his attorney's failure to obtain a more favorable plea agreement. Defendant contends that counsel should have bargained with the State for a conviction on a lesser, "non-deportable" offense, such as criminal trespass to real property (720 ILCS 5/21-3 (West 2012)). Defendant's second argument is that counsel failed to warn him that he could potentially be convicted of an aggravated felony subject to mandatory deportation (8 U.S.C. § 1227(a)(2)(A)(iii) (2012)) *if* his sentence of probation were revoked and *if* he were then resentenced to more than one year in prison. Both arguments are entirely speculative and unsupported by evidence in the record. As neither issue was raised in the circuit court, they are now forfeited. See *People v. Cruz*, 2013 IL 113399, ¶ 20 ("Generally, an issue not raised in the trial court is forfeited on appeal."); *People v. Hillier*, 237 Ill. 2d 539, 547-50 (2010) (defendant's failure to make a record in the trial court forfeits the issue on appeal).

¶ 34                                          CONCLUSION

¶ 35    For the foregoing reasons, the judgment of the appellate court is reversed. The judgment of the circuit court is affirmed.

¶ 36    Appellate court judgment reversed.

¶ 37    Circuit court judgment affirmed.