# Illinois Official Reports

## Appellate Court

---

### *People v. Unzueta*, 2017 IL App (1st) 131306-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ADRIAN UNZUETA, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-1306 |
| Filed | March 16, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-6039; the Hon. Larry G. Axelrood, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Arianne Stein, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Sari London, and Marci Jacobs, Assistant State's Attorneys, of counsel), for the People. |

JUSTICE BURKE delivered the judgment of the court, with opinion.[*]
Presiding Justice Gordon and Justice McBride concurred in the
judgment and opinion.


**OPINION**

¶ 1     Defendant Adrian Unzueta appealed from an order of the circuit court of Cook County,
granting the State's motion to dismiss his petition for relief under the Post-Conviction Hearing
Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). He contended that he made a substantial
showing of a claim of ineffective assistance of counsel based on counsel's failure to advise him
of the deportation consequences of his guilty plea. In November 2015, our court affirmed the
trial court's judgment, finding defendant failed to make a substantial showing of a
constitutional violation where he failed to demonstrate that he was prejudiced by counsel's
performance. *People v. Unzueta*, 2015 IL App (1st) 131306, ¶¶ 31, 33.

¶ 2     Defendant filed a petition for leave to appeal with the Illinois Supreme Court. In November
2016, the supreme court denied defendant's petition but also entered a supervisory order
directing us to vacate our judgment and consider the effect of its decision in *People v. Valdez*,
2016 IL 119860, "on the issue of whether defendant made a substantial showing of a claim of
ineffective assistance of counsel based on counsel's failure to advise him of the deportation
consequences of his guilty plea, and determine if a different result is warranted."

¶ 3     In accordance with the supreme court's directive, we vacated our earlier judgment. After
reconsidering this case in light of *Valdez*, we determine that a different result is not warranted.
Accordingly, we affirm.


¶ 4                                    I. BACKGROUND

¶ 5     The record shows that defendant was charged with burglary and the possession of burglary
tools in connection with an incident that occurred on March 16, 2010.

¶ 6     On July 6, 2010, following an Illinois Supreme Court Rule 402 (eff. July 1, 1997)
conference, defendant pled guilty to burglary and was sentenced to three years' imprisonment,
along with a two-year term of mandatory supervised release (MSR). During the plea hearing,
the trial court admonished defendant, in pertinent part:

> "THE COURT: If you are not a citizen of the United States, you are hereby advised
> a conviction for the offense for which you have been charged may have the
> consequence of deportation, exclusion from admission to the United States, or denial of
> naturalization under the laws of the United States. Do you understand that?
>
> DEFENDANT: Yes."

The parties then stipulated to the following factual basis:

> "If this case were to go to trial, the evidence would show that on March 16, 2010, the
> defendant went into the premises of 2851 North Luna in Chicago, Illinois, which was a

---

[*]Justice Palmer authored the original opinion in this case, which has been adopted in significant
part in this decision. Following Justice Palmer's retirement from the court, Justice Burke has been
substituted as the authoring judge.

residence that was in foreclosure. Witnesses heard noise, even banging coming from there. They noticed the lockbox key was empty and there was no key in it anymore. They called police. The police had arrived, found defendant inside the premises. There was copper piping that was bundled up ready to be removed, and there were holes in the walls where the copper piping had been removed. The defendant admitted his participation in this burglary. He did not have authority to enter or remain in the premises or remove anything from the premises."

¶ 7 Defendant did not move to withdraw his guilty plea or file a direct appeal, but on February 24, 2012, through private counsel, he filed a "Post-Conviction and 2-1401 Petition Filed Pursuant to Padilla v. Kentucky," in which he alleged that his plea counsel was ineffective for failing to inform him of the deportation consequences of his guilty plea. Therein, he asserted, *inter alia*, that (1) he was intoxicated at the time of his arrest; (2) prior to pleading guilty in this case he had lived in the United States for 30 years and was a lawful permanent resident; (3) his daughter, as well as his entire extended family, reside in the United States; (4) his guilty plea in this case caused United States Immigration and Customs Enforcement (ICE) officials to initiate mandatory deportation proceedings against him and he is presently being held in the custody of ICE; and (5) at no time did plea counsel tell him that if he pled guilty to burglary that his lawful permanent residency would be revoked and he would be mandatorily deported from the United States.

¶ 8 In his petition, defendant further alleged that if he had been correctly advised regarding the deportation consequences of his plea, he would not have pled guilty and would have either elected to proceed to trial or attempted to secure a plea bargain to the lesser charge of trespass, which does not require mandatory deportation. In an affidavit in support of that petition, defendant averred that "no defense counsel ever advised me that my plea of guilty in this case would result in mandatory deportation for me. Had I been so advised, I definitely would not have pleaded guilty. I definitely would have elected to plead not guilty and go to trial."

¶ 9 Defendant's postconviction petition advanced to the second stage, and the State filed a motion to dismiss the petition. Following a hearing held on that motion, the circuit court granted the State's motion to dismiss. In doing so, the court stated, *inter alia*, that based on the facts and circumstances of this case, defendant's decision to plead guilty was rational.

¶ 10 This appeal followed.

¶ 11 II. ANALYSIS

¶ 12 On appeal, defendant challenges the propriety of the circuit court's dismissal. Defendant contends that he made a substantial showing that his plea counsel provided ineffective assistance by failing to advise him that his guilty plea to a charge of burglary would lead to mandatory deportation proceedings and that he suffered prejudice as a result. The State maintains that defendant has failed to make a substantial showing that he suffered prejudice due to counsel's failure to so advise him.

¶ 13 At the second stage of postconviction proceedings, defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). A petition may be dismissed at this stage only where the allegations contained in the petition, liberally construed in light of the trial record, fail to make such a showing. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). In making that determination, all well-pleaded facts in the petition and affidavits are taken as true; however, nonfactual assertions that amount to

conclusions are insufficient to require a hearing. *People v. Rissley*, 206 Ill. 2d 403, 412 (2003). Our review is *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

¶ 14    To establish a claim of ineffective assistance of counsel warranting further proceedings under the Act, defendant must show that counsel's performance was deficient and that he suffered prejudice as a result, *i.e.*, a reasonable probability that but for this deficient performance, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). To succeed on a claim of ineffective assistance of counsel, both prongs of *Strickland* must be satisfied. *People v. Flores*, 153 Ill. 2d 264, 283 (1992).

¶ 15    Generally, to establish prejudice in a case involving a guilty plea, defendant must show a reasonable probability that but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Rissley*, 206 Ill. 2d at 457. In *Hall*, our supreme court stated that bare allegations to that effect are insufficient to establish prejudice; rather, a defendant's claim must be accompanied by either a claim of innocence or the articulation of a plausible defense that could have been raised at trial. *Hall*, 217 Ill. 2d at 335-36. The court further found that the question of whether counsel's deficient representation caused defendant to plead guilty depends in large part on predicting whether defendant likely would have been successful at trial. *Id.* at 336 (citing *People v. Pugh*, 157 Ill. 2d 1, 15 (1993)).

¶ 16    Over nine years after our supreme court's decision in *Hall*, the United States Supreme Court issued its decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010). In *Padilla*, the United States Supreme Court held that defense counsel must inform his client whether the client's plea carries a risk of deportation and that the failure to do so constitutes deficient representation under *Strickland*'s first prong. *Id.* at 374. The Court stated that its holding applied to both cases of affirmative misadvice, as well as to instances where counsel failed to address the topic entirely. *Id.* at 370-71, 374. Notably, the Court expressly stated that it was not making a finding in relation to the prejudice prong of *Strickland* but, rather, was solely addressing the deficient performance prong. *Id.* at 369. Specifically, the Court stated, "[w]hether Padilla is entitled to relief on his claim will depend on whether he can satisfy *Strickland*'s second prong, prejudice, a matter we leave to the Kentucky courts to consider in the first instance." *Id.* Nevertheless, the Court then went on to address the concerns raised by the Solicitor General, the State of Kentucky and *amici* regarding the importance of protecting the finality of convictions obtained through guilty pleas. *Id.* at 371-72. In doing so, the Court noted that "[s]urmounting *Strickland*'s high bar is never an easy task" (*id.* at 371) and that " '[a]ttorney errors … are as likely to be utterly harmless in a particular case as they are to be prejudicial' " (*id.* at 371-72 (quoting *Strickland*, 466 U.S. at 693)). Lastly, in this regard, and importantly here, the Court stated, "[m]oreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been *rational under the circumstances*." (Emphasis added.) *Id.* at 372.

¶ 17    According to defendant, the *Padilla* court's statement that a defendant would have to convince a court that a decision to reject a plea bargain would have been "rational under the circumstances" was essentially the announcement of a new prejudice standard to be applied in cases involving a counsel's failure to advise a defendant of immigration consequences of his guilty plea. He thus maintains that his decision to forego a plea deal would have been rational due to his personal and family ties to the United States and because he could have tested the State's case through cross-examination and presented his own evidence at trial, thereby

- 4 -

affording him the opportunity to avoid certain conviction. This new standard, he maintains, supplants the long-standing prejudice standard set forth in *Hall* and *Pugh*, described *supra* ¶¶ 14-15, and thus relieves him of the obligation of showing that he was likely to succeed at trial.

¶ 18                    A. *Padilla* Violations and the *Strickland* Prejudice Requirement

¶ 19       Since the decision in *Padilla*, the various districts of this court have considered the question of what must be shown to establish prejudice under the second prong of *Strickland* when a *Padilla* violation has occurred. In *People v. Gutierrez*, 2011 IL App (1st) 093499, ¶¶ 7, 45-46, the First District of this court ruled that the defendant, in seeking leave to file a successive postconviction petition, failed to establish that he was prejudiced by his counsel's failure to inform him of the possible immigration consequences of his guilty plea. There the defendant, who pled guilty to first degree murder, had claimed that the evidence against him was not overwhelming and that had he known that his guilty plea would subject him to deportation, he would have gone to trial. *Id.* ¶¶ 3-4, 7. The appellate court, after evaluating the evidence, rejected that claim and found that in order to show prejudice the defendant was required to show that he would have succeeded at trial and that, contrary to his contentions, the evidence against him was overwhelming. *Id.* ¶ 45. There was no discussion of an alternative standard such as the standard proposed here by defendant.

¶ 20       The same result was reached by the Fourth District of our court in *People v. Pena-Romero*, 2012 IL App (4th) 110780. However, the court in *Pena-Romero* considered both the more restrictive prejudice standard set forth in *Hall* and *Pugh* as well as the more liberal "rational under the circumstances" standard espoused by the defendant. *Id.* ¶¶ 16-19. In *Pena-Romero*, the defendant had pled guilty to attempted first degree murder. *Id.* ¶ 4. His motion to withdraw his guilty plea was denied at a hearing on July 30, 2010, at which time the trial court found that the defendant had " 'resided in and has been employed in the United States since 2001.' " *Id.* ¶ 8. On appeal, he contended he received ineffective assistance of guilty plea and postplea counsel. *Id.* ¶ 1.

¶ 21       First, referring to the prejudice standard set forth in *Hall*, the appellate court noted that the defendant did not make a claim of innocence or articulate a plausible defense; he simply rested on the bare allegation that he would have pled not guilty had he known of the deportation consequences of his plea. *Id.* ¶ 17. Ultimately, in rejecting the defendant's claim of ineffective assistance of postplea counsel, the court stated:

> "As we have pointed out, however, a defendant alleging ineffective assistance of counsel must still establish prejudice. The bare allegation that, but for the alleged error, a defendant would have insisted on trial, without something more, is not enough. Standing alone, such an allegation is subjective, self-serving, and insufficient to satisfy the *Strickland* requirement for prejudice. [Citation.] Defendant's self-serving statements that, but for his counsel's inadequate representation, he would have pleaded not guilty, unaccompanied by either a claim of innocence or the articulation of any plausible defense that he could have raised had he opted for a trial, is insufficient to demonstrate the required prejudice. Defendant does not now allege he is innocent, nor does he claim to have any plausible defense he could have raised had he chosen a trial. Defendant admitted cutting his wife's neck while asking if she knew what their children would do if both of them died that night. Defendant has never repudiated his

sworn admission. Given these facts, defendant has not established the prejudice required under *Strickland*." *Id.* ¶ 20.

¶ 22    Additionally, however, the Fourth District went further and considered whether the defendant's claim could survive without a claim of innocence or a plausible defense.

"Even if we excused defendant's failure to claim innocence or raise a plausible defense as *Hall* seems to require, defendant does not explain how his alleged ignorance of the deportation consequences factored into his decision to plead guilty. Or, stated differently, he does not explain why, had he known of that consequence, he would have pleaded not guilty and insisted on going to trial. While *Padilla* did not resolve the prejudice prong, it stated what was required for a defendant to show prejudice: 'a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.' *Padilla*, 559 U.S. at [372]. It is hard to imagine how rejection of the plea offer in this case would have been rational. Going to trial would not have spared defendant of the effect of deportation if he were convicted, which was likely, and would also have subjected him to the possibility of a greater term of imprisonment. The evidence against defendant is overwhelming. Essentially, the prejudice defendant alleges is dissatisfaction about the effects of deportation, which would not have changed if he had gone to trial and been convicted." *Id.* ¶ 18.

¶ 23    More recently, the Third District chose a different path. In *People v. Deltoro*, 2015 IL App (3d) 130381, ¶ 3, the defendant had pled guilty to two counts of unlawful possession of a controlled substance with intent to deliver. He filed a petition for postconviction relief, alleging that both plea counsel and the trial court failed to advise him of the potential immigration consequences of his guilty plea. *Id.* ¶ 4. The trial court summarily dismissed the petition. *Id.* ¶ 8. On appeal, the Third District found that the defendant had presented the gist of a constitutional claim for ineffective assistance of plea counsel, reversed the dismissal, and remanded the matter for second-stage proceedings. *Id.* ¶ 10.

¶ 24    As to the second prong of *Strickland*, the defendant alleged that he suffered prejudice because (1) he would not have pled guilty had counsel advised him of the potential immigration consequences of his plea and (2) there was a rational basis for him to reject the plea offer because all of his friends and family live in the United States and he was not guilty of the offenses charged. *Id.* ¶ 21. In reversing the dismissal of the petition, the Third District flatly rejected the concept that in order to satisfy the prejudice requirement a defendant must allege the existence of a plausible defense and that it was likely he would have succeeded at trial. *Id.* ¶ 24. Referring to the "rational under the circumstances" language of *Padilla* the court stated:

"A defendant is prejudiced in the plea context if there is a reasonable probability that absent trial counsel's deficient performance, the defendant would have pled not guilty and would have insisted on going to trial. [Citations.] Where a defendant claims that counsel failed to advise him as to the immigration consequences of his plea, the defendant 'must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.' *Padilla*, 559 U.S. at 372. A defendant facing potential deportation may show that his decision to reject a plea offer and go to trial is rational without showing that he would have likely succeeded at trial. See *id.* at 368 ('We *** have previously recognized that " '[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.' " ' (quoting *Immigration & Naturalization Service v. St. Cyr*, 533 U.S. 289,

322 (2001), quoting 3 Crim. Def. Tech. (MB) §§ 60A.01, 60A.02(2) (1999))). See also *United States v. Orocio*, 645 F.3d 630, 645 (3d Cir. 2011)." *Id.* ¶ 22.

The *Deltoro* court further stated that while the apparent existence of a plausible trial defense may make a defendant's showing of prejudice stronger, it is not required in order to show prejudice. *Id.* ¶ 24. The court reasoned that while such a requirement makes sense in other contexts, such as the failure to inform the defendant of an affirmative defense as in *Hall*, it does not in this context. *Id.* That is because a defendant facing deportation may show that his decision to reject a plea offer and go to trial would have been "rational" without showing that he would likely have succeeded at trial. *Orocio*, 645 F.3d at 643.[1]

¶ 25   The supreme court's recent decision in *Valdez* did not address the question of whether a defendant must show actual innocence or a plausible defense to establish prejudice. The *Valdez* court set forth the following case law governing the *Strickland* "prejudice" prong in the context of guilty pleas:

> "To establish prejudice in the guilty plea context, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' *Hill v. Lockhart*, 474 U.S. 52, 59; *People v. Hughes*, 2012 IL 112817, ¶ 63. A conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice. *Hughes*, 2012 IL 112817, ¶ 64; *People v. Hall*, 217 Ill. 2d 324, 335 (2005). Rather, as the Supreme Court noted in *Padilla*, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.' *Padilla*, 559 U.S. at 372 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000))." *Valdez*, 2016 IL 119860, ¶ 29.

Ultimately, however, the *Valdez* court resolved the defendant's ineffective assistance claim by concluding that any prejudice he suffered was cured by the trial court's statutory admonishments regarding the potential immigration consequences of his conviction. *Id.* ¶ 32.

¶ 26                    B. Advisement Concerning Status as an Alien
              Pursuant to Section 113-8 of the Code of Criminal Procedure of 1963

¶ 27   The State takes the position that *Padilla* did not create a new prejudice standard, that *Gutierrez* was correctly decided and that *Guzman*[2] as well as *Deltoro* were wrongly decided. It

---

[1]Arguably, the Third District took this position earlier than in *Deltoro*. In *People v. Guzman*, 2014 IL App (3d) 090464, ¶¶ 34-35, *aff'd on other grounds*, 2015 IL 118749, a similar result was reached, but the Third District also noted that the defendant there alleged he had a plausible defense. However, the majority opinion also stated that the defendant's family ties and bonds to the United States provided a rational basis to reject a plea deal. *Id.* ¶ 35. Further, Justice Holdridge in his special concurrence and partial dissent in *Guzman* clearly stated that he felt that a defendant who fears deportation more than he fears a longer prison sentence might rationally choose to go to trial, even if his defense does not appear very likely to succeed. *Id.* ¶ 78 (Holdridge, J., specially concurring in part and dissenting in part). In that regard, he specifically stated that he disagreed with the First District's holding in *Gutierrez*. *Id.* ¶ 80.

[2]In *Guzman*, the Third District also wrestled with the question of whether the trial court's failure to give admonishments pursuant to section 113-8 of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-8 (West 2008)) rendered the defendant's guilty plea involuntary. *Guzman*, 2014 IL App (3d) 090464, ¶¶ 19-25. In 2015, the supreme court issued its opinion in *Guzman*, in which it affirmed the

maintains that the standard remains, as set forth in *Hall* and *Pugh*, that in order to show prejudice the defendant must show that he was actually innocent or that he had a plausible defense and was likely to succeed at trial.

¶ 28 Additionally, the State maintains that, this controversy aside, the defendant herein cannot show prejudice that resulted from his counsel's failure to advise him of the immigration consequences of his guilty plea, as the trial court fully complied with the provisions of section 113-8 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-8 (West 2012)). As a result, the State contends that any prejudice defendant may have suffered by his counsel's failure to advise him of the immigration consequences of his guilty plea was cured by the trial court. We find it unnecessary to reach the issue described above in Part A as we agree with the State's later contention that any prejudice that defendant may have suffered as a result of counsel's failure, was cured by the trial court's strict adherence with the provisions of section 113-8 of the Code.

¶ 29 Among the many admonitions that the trial court is required to give to a defendant pleading guilty are those concerning the possibility of immigration consequences upon conviction. The statute provides as follows:

"Before the acceptance of a plea of guilty *** the court shall give the following advisement to the defendant in open court:

'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " *Id.*

¶ 30 As noted above, *supra* ¶ 6, the trial court fully complied with this provision by delivering this admonition. The trial court then inquired of the defendant, "Do you understand that?" The defendant responded, "Yes."

¶ 31 This advisement has a double effect here. First, it cures any deficiency on counsel's part. Second, the record as a result belies the allegation that defendant would not have pled guilty had he been adequately advised by his attorney because he was so advised by the trial court.

¶ 32 We are guided by the supreme court's recent decision in *Valdez*. There, the supreme court considered whether counsel provided ineffective assistance when he failed to inform the defendant, before the defendant pled guilty to burglary, that a burglary conviction subjected the defendant to mandatory deportation. *Valdez*, 2016 IL 119860, ¶ 13. The supreme court first considered the "performance" prong of the *Strickland* test, reviewing *Padilla* to determine the duties that counsel owed the defendant. *Id.* ¶ 16. The *Valdez* court quoted the *Padilla* court's statement that " '[w]hen the law is not succinct and straightforward ***, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.' " (Emphasis omitted.) *Id.* ¶ 19 (quoting *Padilla*, 559 U.S. at 369). The *Valdez* court concluded that the immigration consequences of the defendant's burglary charge were not " 'succinct, clear, and explicit,' so as to require a warning by counsel that deportation was presumptively mandatory." *Id.* ¶ 26. Instead, the

___

appellate court on this question and held that the failure to give these admonishments did not render the plea involuntary. *People v. Guzman*, 2015 IL 118749, ¶¶ 1, 36. The appellate court's ruling on the issue of ineffective assistance of counsel, which is described above, was not challenged before the supreme court. *Id.* ¶¶ 6, 10-11.

supreme court stated, counsel was only required to provide "a general warning of the possibility of immigration consequences." *Id.* ¶ 26. Because counsel gave *no* advice to the defendant regarding the immigration consequences of his conviction, the *Valdez* court concluded the defendant had sufficiently alleged his counsel's performance was deficient. *Id.* ¶ 27.

¶ 33 Accordingly, the supreme court turned to whether the defendant adequately demonstrated prejudice. *Id.* ¶ 29. In this regard, the *Valdez* court agreed with the State that because counsel was only required to advise the defendant that pleading guilty "may have" the consequence of deportation, and because the circuit court advised the defendant under section 113-8 of the Code that he may be deported, the circuit court's admonishments cured any prejudice suffered by the defendant. *Id.* ¶ 30. The supreme court stated as follows:

> "Defendant cannot now argue that his counsel's failure to inform him of the immigration consequences of a guilty plea caused him to forgo a trial when the circuit court conveyed the same information to him and defendant still chose to plead guilty. See [*People v. Jones*, 144 Ill. 2d 242, 263 (1991)] ("To accept the defendant's claim would require us to characterize the court's lengthy and exhaustive admonitions as merely a perfunctory or ritualistic formality; a characterization we are unwilling to make."). Any prejudice suffered by defendant as a result of counsel's failure was cured by the circuit court's strict compliance with section 113-8 of the Code. Accordingly, defendant has failed to establish he was prejudiced under *Strickland*, and the circuit court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea." *Valdez*, 2016 IL 119860, ¶ 32.

¶ 34 Similarly, here, we conclude that the trial court's statutory admonishments cured any prejudice defendant suffered as a result of counsel's failure to advise him of the deportation consequences of his conviction. Thus, defendant has failed to establish he was prejudiced by counsel's purportedly deficient performance.

¶ 35 In a supplemental brief that we allowed defendant to file, defendant argues that *Valdez* supports the opposite conclusion, *i.e.*, that the trial court's admonishments were insufficient to cure the prejudice he suffered.[3] Defendant's argument stems from his claim that while the defendant's immigration consequences in *Valdez* were not "succinct, clear, and explicit," the immigration consequences in his case were a certainty under federal immigration law. According to defendant, *Valdez* suggests a court's admonishments under section 113-8 of the Code that there *may* be immigration consequences are insufficient to cure prejudice in a case such as his where deportation is a certainty. Defendant bases his contention on the fact that before the *Valdez* court addressed the curative effect of the circuit court's admonishments, it first analyzed whether the immigration consequences of the defendant's conviction were clear. Defendant argues that such an analysis would have been unnecessary if a court's statutory admonishments are sufficient to cure prejudice in cases in which a criminal conviction *may* require deportation as well as cases in which a conviction *certainly* requires deportation.

¶ 36 We are not persuaded by defendant's analysis of *Valdez*.[4] In determining defense counsel's duties in *Valdez*, the supreme court observed that the immigration consequences of

---

[3]The State also filed a supplemental appellee brief, and defendant filed a supplemental reply brief.

[4]Defendant's contention hinges on his claim that his deportation was a certainty under immigration law and that counsel was therefore required to inform him of the "dire and specific consequences of his

the defendant's conviction were held to be "succinct, clear, and explicit" based on express language in the Immigration and Nationality Act (Immigration Act) (8 U.S.C. §1227 (2006)). *Id.* ¶ 20. The *Valdez* court found that, unlike the immigration consequences of the *Padilla* defendant's conviction, the immigration consequences of the defendant's conviction were not clear from the face of the Immigration Act. *Id.* The Immigration Act did not specifically identify burglary as a deportable offense; instead, it set forth general categories of offenses, including crimes involving moral turpitude and aggravated felonies, which may or may not have included burglary. *Id.*

¶ 37    The appellate court in *Valdez* held that counsel had a duty to research federal case law to determine whether the defendant's burglary conviction fell within one of these general categories in the Immigration Act. *Id.* ¶ 21. The appellate court further found that, through minimal research, counsel could have determined that "burglary predicated upon theft" was considered a crime involving moral turpitude. *Id.*[5] The appellate court thus held that counsel had a duty to inform the defendant that his plea rendered his deportation "presumptively mandatory." *Id.*

¶ 38    The supreme court disagreed that the immigration consequences of the defendant's burglary conviction were "succinct, clear, and explicit," concluding that *Padilla* strongly suggested that "where a crime falls within a 'broad classification' of offenses, such as crimes involving moral turpitude, the law is not 'succinct and straightforward.' " *Id.* ¶ 22 (quoting *Padilla*, 559 U.S. at 368-69). The *Valdez* court stated that "where the face of the statute does not succinctly, clearly, and explicitly indicate that a conviction subjects a defendant to mandatory deportation, counsel need only advise a defendant that his plea 'may' have immigration consequences." *Id.* The supreme court further indicated that, even if *Padilla* required counsel to undertake a minimal review of case law, federal authorities did not clearly resolve whether the defendant's burglary conviction was a "crime of moral turpitude." *Id.* ¶ 22. After setting forth those federal authorities, the supreme court stated as follows.

> "In light of the split of authority described above, we cannot agree that the immigration consequences of defendant's conviction were 'succinct, clear, and explicit,' so as to require a warning by counsel that deportation was presumptively mandatory. Unlike the straightforward application of the statute in *Padilla*, determining whether defendant's burglary charge, as defined by Illinois state law, is a [crime of moral turpitude] requires extensive research of federal case law. Even then, there is no clear answer. Under these circumstances, we hold that counsel was required to give defendant only a general warning of the possibility of immigration consequences." *Id.* ¶ 26.

plea" as opposed to simply informing him that his conviction may result in deportation. We need not determine whether counsel was, in fact, required to advise defendant of the specific consequences of his plea instead of merely advising defendant that he may be subject to deportation, because we conclude that in either instance, the trial court's admonishments were sufficient to cure any prejudice defendant suffered.

[5]The appellate court held the defendant's conviction did not qualify as an aggravated felony under the immigration laws because the defendant was sentenced to less than one year of imprisonment, and the relevant statute defined an aggravated felony as, *inter alia*, a burglary offense for which the term of imprisonment was at least one year (8 U.S.C. § 1101(a)(43)(G) (2012)). *Valdez*, 2016 IL 119860, ¶ 21 n.1.

¶ 39    The foregoing summation of the *Valdez* court's decision shows that in analyzing the immigration consequences of the defendant's conviction, the *Valdez* court provided clarity to courts, attorneys, and parties regarding the meaning of *Padilla* and defense counsel's duties where the immigration consequences of his client's convictions are not clear from the face of the Act or from case law. The supreme court also disagreed with the appellate court's resolution of the issue, which otherwise would have had precedential effect. Accordingly, we reject defendant's argument that the *Valdez* court's examination of whether the defendant's deportation was a certainty necessarily means that a trial court's admonishments under section 113-8 of the Code are only sufficient to cure prejudice in those instances in which the deportation consequences of a defendant's conviction are unclear. We decline to read such a limitation into *Valdez*. We also reject defendant's claim that *Padilla* supports such an interpretation of *Valdez*, where the *Padilla* court did not resolve the prejudice prong of *Strickland*.

¶ 40    Further, as we explained in our original opinion in this case, we find unpersuasive defendant's argument that the statutory advisement in this case was inadequate to stem the prejudice he suffered because it only informed him that he *may* suffer immigration consequences rather than being advised that he *would* suffer those consequences. Defendant cites no authority for the proposition that there is a meaningful distinction in this context between being told that one *may* be deported versus being told that one *would* be deported. See *People v. Ward*, 215 Ill. 2d 317, 332 (2005) ("A point raised in a brief but not supported by citation to relevant authority" is forfeited.). In fact, *Pena-Romero* stands for just the opposite proposition. There Justice Pope, writing for the majority, noted that the record of the trial court's compliance with section 113-8 of the Code belied the defendant's claim that he was unaware of the deportation consequences of his plea. *Pena-Romero*, 2012 IL App (4th) 110780, ¶ 17. Further, in light of the claimed utmost importance to the defendant that he avoid deportation, the fact that he pled guilty while knowing the risk of deportation existed belies his assertion that his decision would have been different if he had been told that the risk was a certainty. At the very least, the advisement by the court that this risk existed put the defendant on notice that further inquiry was warranted if immigration consequences would have affected his decision to plead guilty. See *In re J.T.*, 221 Ill. 2d 338, 347-48 (2006) (where admonitions that did not strictly comply with the rule were sufficient to place the respondent on notice of his rights).

¶ 41    As a result of all of the above, we find that the defendant has failed to make a substantial showing of a constitutional violation in that he has not shown that he was prejudiced by his counsel's error. Therefore, the trial court did not err in granting the State's motion to dismiss.

¶ 42                                    III. CONCLUSION
¶ 43    For the reasons stated, we affirm the trial court's decision.

¶ 44    Affirmed.