2024 IL App (1st) 231333-U

No. 1-23-1333

THIRD DIVISION
May 1, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 12539 |
| | ) | |
| LUIS AVILA, | ) | Honorable |
| | ) | Joanne Rosado, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE D.B. WALKER delivered the judgment of the court.
Justices Lampkin and Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse the summary dismissal of defendant's postconviction petition where the petition presented an arguable claim that his plea counsel provided ineffective assistance, as well as an arguable claim that he was prejudiced by counsel's deficient performance.

¶ 2    Defendant Luis Avila appeals the dismissal of his petition at the first stage of proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2022). Pursuant to a negotiated plea, defendant pleaded guilty to attempted arson. The petition alleged that plea

counsel provided ineffective assistance by failing to advise defendant of the mandatory deportation consequences of pleading guilty. Although the circuit court found counsel's performance deficient, it determined that the trial court's admonishments cured any prejudice resulting from the deficiency. On appeal, defendant contends that the court's admonishments did not cure the prejudice from counsel's unreasonable performance where they only informed defendant that his conviction "may" lead to deportation. For the following reasons, we reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4      The State charged defendant with attempted arson and criminal damage to property regarding an incident that occurred on July 4, 2021. Pursuant to a negotiated plea, defendant pleaded guilty to attempted arson and the State recommended a sentence of three years' imprisonment. Before accepting the plea, the trial court admonished defendant on the consequences of his plea, which included the following:

> "Now, sir, if you are not a citizen of the United States you are hereby advised that a conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States or denial of naturalization under the laws of the United States, do you understand that?"

Defendant answered, "Yes."

¶ 5      After its admonishments, the court heard the factual basis for defendant's plea. If called to testify, Dulce Tovar would identify defendant in court and state that on July 4, 2021, she and defendant engaged in a verbal altercation during which defendant broke the windows of Tovar's 2010 Kia Soul vehicle. Defendant then stuffed the gas tank of her vehicle with firecrackers and sparklers and attempted to light those objects in order to burn the vehicle. The trial court found

that a factual basis existed for defendant's plea and that he understood the "nature of the charges against him [and] the possible penalties of his case under the law." The court sentenced defendant to three years in the Illinois Department of Corrections with credit for time served.

¶ 6    Defendant was released from custody on January 26, 2023. He was immediately detained by officers from the United States Immigration and Customs Enforcement and informed that he was "removable" from the United States based on his aggravated felony conviction.

¶ 7    On May 23, 2023, defendant filed a petition for postconviction relief under the Act. Therein, he alleged that he was born in Mexico and has been a lawful permanent resident of the United States since he was seven years old. The preliminary arrest report identified his birthplace as Mexico. He alleged that a conviction for the offense of attempted arson is expressly listed in the Immigration and Nationality Act as one that renders the offender deportable and subject to mandatory immigration detention pending removal proceedings. Defendant further alleged that his counsel during plea negotiations "never once asked [him] about his immigration status or his place of birth." Therefore, defendant was never advised of the immigration consequences of his plea. If defendant had known that pleading guilty to attempted arson would make his deportation "virtually certain," he would have rejected the State's offer and chosen to go to trial.

¶ 8    Defendant attached his affidavit to the petition. Defendant stated that he was 37 years old and had been living in the United States legally for 30 years. His family, including his parents and grandparents, resides in the United States. He has seven children who are citizens of the United States, and his girlfriend is also a citizen. Defendant has no remaining family in Mexico. Defendant asserted that had he known pleading guilty to attempted arson would make his deportation a certainty, he "would have asked [counsel] to try to negotiate for a plea that would not be an

aggravated felony, and if that was not possible, [he] would have risked going to trial and being convicted of two Class 3 felonies because [his] entire life is here in the United States."

¶ 9 Defendant further stated that he answered "yes" when the court asked whether he understood the deportation consequences of his plea because counsel said nothing to him about immigration. When the court used the word "may," defendant thought it meant "maybe, or maybe not." He stated that counsel's failure to advise him of the immigration consequences of his plea prevented him from considering whether to proceed to trial in an attempt to avoid deportation.

¶ 10 The circuit court dismissed defendant's petition as frivolous and patently without merit. In its written order, the court found that defendant's plea "very likely" made him a subject of deportation under federal immigration law, and when the deportation risk is clear, counsel must advise him of the risks of deportation. If counsel did not advise defendant of this clear risk, he would have performed deficiently. However, citing *People v. Unzueta*, 2017 IL App (1st) 131306-B, the court determined that any prejudice stemming from counsel's deficient performance was cured by the trial court's admonishments.

¶ 11 Defendant filed this timely appeal.

¶ 12                                    II. ANALYSIS

¶ 13 The Act is a legislative creation that allows an incarcerated defendant to assert a substantial violation of his or her constitutional rights at trial. *People v. Bailey*, 2017 IL 121450, ¶ 17. A postconviction proceeding is not a substitute for a direct appeal but instead "offers a mechanism for a criminal defendant to assert a collateral attack on a final judgment." *People v. Robinson*, 2020 IL 123849, ¶ 42. Proceedings under the Act are divided into three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the first stage, the trial court may dismiss a postconviction petition that is "frivolous or *** patently without merit." 725 ILCS 5/122–2.1(a)(2) (West 2020). A petition is

frivolous or patently without merit if it has no arguable basis either in law or fact. *People v. Hodges*, 234 Ill.2d 1, 11 (2009).

¶ 14   Defendant's petition was summarily dismissed at the first stage. At this stage, the petition must present only a limited amount of detail and need not include legal argument or citation to legal authority. *People v. Edwards*, 197 Ill.2d 239, 244–45 (2001). Furthermore, the allegations, taken as true and liberally construed, need only present the gist of a constitutional claim. *People v. Harris*, 224 Ill.2d 115, 126 (2007). This is a low threshold that only requires defendant to plead sufficient facts to assert an arguably constitutional claim. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). We review the circuit court's summary dismissal of a postconviction petition *de novo*. *People v. Coleman*, 183 Ill.2d 366, 388–89 (1998).

¶ 15   In his postconviction petition, defendant alleged ineffective assistance of counsel during the plea negotiations. To prevail on an ineffective assistance claim, defendant must show that counsel's performance was objectively unreasonable, and that defendant was prejudiced by counsel's deficient performance. *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced." (Emphasis added.) *Id.*

¶ 16   The State does not challenge the circuit court's finding that defendant's petition satisfied the deficient performance prong of the test. Therefore, we must only determine whether defendant's petition sufficiently alleged that he was arguably prejudiced by counsel's deficiency. To show prejudice in this context, defendant must establish that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have gone to

trial. *People v. Valdez*, 2016 IL 119860, ¶ 29. In other words, defendant must show that rejecting the plea deal would have been rational given the circumstances of his case. *Id*. See also *People v. Brown*, 2017 IL 121681, ¶ 48.

¶ 17    Here, defendant alleged in his petition that he would have rejected the plea offer if his counsel had properly advised him of the deportation consequences of his plea. He stated in his affidavit that, at the time of his plea, he had been living in the United States legally for 30 years. All of his family resided in the United States, including his seven children and his girlfriend who are United States citizens. Defendant has no remaining family in Mexico. He asserted that had he known that pleading guilty to attempted arson would make his deportation a certainty, he "would have asked [counsel] to try to negotiate for a plea that would not be an aggravated felony, and if that was not possible, [he] would have risked going to trial and being convicted of two Class 3 felonies because [his] entire life is here in the United States."

¶ 18    These allegations, which we must take as true at this stage, sufficiently support defendant's claim that he was prejudiced by counsel's failure to advise him of the consequences of his plea. See *Lee v. United States*, 137 S. Ct. 1958, 1968-69 (2017) (finding it was not irrational for the defendant, who had strong connections to this country, to risk going to trial rather than accept a plea offer that would "*certainly*" lead to deportation (emphasis in the original)); see also *United States v. Swaby*, 855 F. 3d 233, 243-44 (4th Cir. 2017) (finding it rational for the defendant, who had strong familial connections to this country, to risk a trial rather than "plead guilty and accept the certainty of deportation"); *People v. Pagsisihan*, 2020 IL App (1st) 181017, ¶¶ 37-40 (finding that rejecting the plea was a rational consideration where the defendant has lived in this country since he was a child, all of his immediate family are in the United States, he has a wife and daughter in this country, and his connections to the Philippines are "nonexistent").

¶ 19    The State, however, argues that defendant's petition contains only bare, self-serving allegations with no support from contemporaneous evidence to substantiate his assertions. The State cites *People v. Pena-Romero*, 2012 IL App (4th) 110780, to assert that to establish prejudice, defendant cannot rest on the bare allegation that he would not have pleaded guilty had he known the consequences of his plea. Rather, defendant must either raise a claim of actual innocence, or articulate a plausible defense that could have been raised at trial.

¶ 20    First, we note that *Pena-Romero* was decided prior to our supreme court's determination in *Brown*. In *Brown*, the court acknowledged that when a defendant alleges counsel was ineffective regarding defendant's plea as a matter of trial strategy or possible acquittal, the standard of showing actual innocence or a plausible defense is applicable. *Brown*, 2017 IL 121681, ¶ 45. However, that standard does not apply when, as here, the defendant alleges attorney error regarding defendant's understanding of the consequences of pleading guilty. *Id.* ¶ 46. In this situation, the proper inquiry is whether defendant has shown that rejecting the plea bargain would have been rational under the circumstances of his case. *Id.* ¶ 48.

¶ 21    The State further argues that defendant failed to demonstrate prejudice because he did not present contemporaneous evidence showing that he would have proceeded to trial rather than risk deportation. The State contends that nothing in the record indicates defendant would have preferred to go to trial, or that immigration consequences were the determinative factor in accepting the plea. The State argues that, unlike *Lee*, where the defendant discussed the deportation consequences of pleading guilty with his attorney and made it known that he would go to trial rather than risk deportation, defendant in this case never made such statements. See *Lee*, 137 S. Ct. at 369.

¶ 22    No statements by defendant are in the record because, as defendant alleged in his petition, his counsel never discussed the immigration consequences of pleading guilty with him. It was not defendant's burden to raise this issue with his attorney. Rather, "[i]t is quintessentially the duty of counsel to provide [his] client with available advice about an issue like deportation," and failing to do so renders counsel's performance deficient. *Padilla v. Kentucky*, 130 S. Ct. 1473, 1484 (2010). Defendant's arrest report stated that he was born in Mexico, and there was no indication that he sought to hide his noncitizen status. It is the "critical obligation" of counsel to advise defendant of the advantages and disadvantages of pleading guilty, including advice about possible deportation. *Id*. When counsel has failed to meet this obligation, there likely is nothing in the record to show that defendant would have preferred to go to trial rather than face certain deportation at the time he accepted the plea offer.

¶ 23    Under these circumstances, it is sufficient that defendant alleges facts supporting his claim that rejecting the plea offer would have been a rational decision. Defendant has done so here. See *People v. Hoare*, 2018 IL App (2d) 160727, ¶ 48 (finding that the defendant sufficiently alleged prejudice at the first stage where his petition stated that he was married to a United States citizen and he has two young children who are also citizens, and he and his wife are employed in the United States and have no desire to move elsewhere). We find that defendant has met the low threshold, at the first stage, to plead sufficient facts asserting an arguable claim that he was prejudiced by counsel's deficient performance.

¶ 24    The State contends that, even if defendant's petition presented a gist of a constitutional claim, the trial court's admonishments to defendant cured any prejudice resulting from counsel's failure to inform him about the deportation consequences of his plea. As support, the State cites *People v. Valdez*, 2016 IL 119860, and *People v. Unzueta*, 2017 IL App (1st) 131306-B.

¶ 25    In *Valdez*, the defendant pleaded guilty to burglary and was sentenced to three years of probation. *Valdez*, 2016 IL 119860, ¶ 1. At the time, he was a citizen of the Dominican Republic but married to a United States citizen. *Id*. During the plea hearing, the court advised the defendant that a burglary conviction " 'may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " *Id*. ¶ 8. He stated that he understood the warning and wished to plead guilty. Later in the proceedings, the court again admonished the defendant that if he pleaded guilty to burglary, he " 'could be deported from the country.' " The defendant indicated that he understood. *Id*.

¶ 26    The defendant subsequently filed a motion to withdraw his guilty plea. He alleged ineffective assistance of counsel in that his attorney never warned him of the immigration consequences of pleading guilty to burglary. *Id*. ¶ 9. The trial court denied the motion, finding that any prejudice resulting from counsel's failure to inform the defendant was cured by the court's admonishment that the burglary conviction " 'may have the consequences of deportation.' " *Id*. ¶ 10. A divided appellate court reversed, ruling that counsel had a duty to inform the defendant that deportation resulting from a burglary conviction was " 'presumptively mandatory' " under federal law, and the defendant established that he would have gone to trial had he known of the consequences of his plea. *Id*. ¶ 11.

¶ 27    The supreme court noted that it was not clear on the face of the Immigration and Nationality Act that defendant's burglary conviction rendered him deportable. *Id*. ¶ 20. The statute did not identify burglary as a deportable offense. Therefore, to be a deportable offense, burglary must fall within a general category of offenses involving moral turpitude. *Id*. ¶¶ 20-21. However, the Supreme Court in *Padilla* "strongly" suggested that the law regarding whether a crime involves moral turpitude is not succinct or straightforward. *Id*. ¶ 22. Our supreme court determined that

when the law is not succinct or clear, counsel need only advise the defendant that a pending conviction *may* carry a risk of adverse immigration consequences. (Emphasis added.) *Id*. ¶ 26 (quoting *Padilla*, 130 S. Ct. at 1483).

¶ 28    Although counsel in *Valdez* failed to advise the defendant of any consequences of his guilty plea, the supreme court found the defendant was properly admonished that his plea "may have" the consequence of deportation. *Id*. ¶¶ 30, 32. The court reasoned that the trial court "conveyed the same information" he should have received from his counsel, and he still chose to plead guilty. *Id*. ¶ 32. As such, any prejudice resulting from counsel's deficient performance was cured by the trial court's strict compliance with section 113-8 of the Code of Criminal Procedure of 1963 (Code). *Id*. ¶ 32. See 725 ILCS 5/113-8 (West 2022) (providing that before accepting a defendant's guilty plea, the trial court shall advise him or her that "[i]f you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States").

¶ 29    Like *Valdez*, the defendant in *Unzueta* also pleaded guilty to burglary. *Unzueta*, 2017 IL App (1st) 131306-B*, ¶* 6. At the plea hearing, the trial court advised the defendant that if he was not a citizen of the United States, a conviction of burglary "may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States." *Id*. The defendant stated that he understood. *Id*.

¶ 30    The defendant did not move to withdraw his plea, but later filed a postconviction petition in which he alleged ineffective assistance of counsel for failing to inform him of the immigration consequences of his guilty plea. *Id*. ¶ 7. He alleged that he has lived in the United States for 30 years as a lawful resident, and his daughter and extended family live in the United States. *Id*. In

his affidavit, the defendant stated that had he been properly advised of the deportation consequences of his plea, he would have elected to go to trial. *Id*. ¶ 8.

¶ 31    The court advanced the petition to the second stage of proceedings where the State filed a motion to dismiss. *Id*. ¶ 9. The trial court granted the motion and the defendant appealed. At the second stage of postconviction proceedings, the defendant had to make a substantial showing of a constitutional violation. *Id*. ¶ 13. The defendant argued that he made a substantial showing of ineffective assistance of counsel where his plea counsel failed to advise him that his plea would lead to mandatory deportation, and he was prejudiced as a result. *Id*. ¶ 12.

¶ 32    Following *Valdez*, which found that the immigration consequences of a burglary conviction were not clear or succinct, this court determined that the trial court's admonishment to defendant that his guilty plea *may* lead to deportation cured any prejudice resulting from counsel's ineffective assistance. ¶¶ 32-34.

¶ 33    As did the trial court in *Valdez* and *Unzueta*, the trial court in this case followed section 113-8 of the Code and admonished defendant that if he was not a citizen of the United States, "a conviction of the offense for which you have been charged *may* have the consequences of deportation, exclusion from admission to the United States or denial of naturalization under the laws of the United States." (Emphasis added.) The State thus argues that *Valdez* and *Unzueta* are applicable, and we should affirm the circuit court's dismissal of defendant's postconviction petition as frivolous and patently without merit. However, important distinctions exist between those cases and the case at bar.

¶ 34    First, the defendants in *Valdez* and *Unzueta* pleaded guilty to burglary, whereas defendant here pleaded guilty to attempted arson. Unlike burglary, the offense of arson is explicitly identified in the Immigration and Nationality Act as an aggravated felony. See 8 U.S.C.A.

§ 1101(a)(43)(E)(i) (West). This provision defines "aggravated felony" as an offense described in "section 844(d), (e), (f), (g), (h), or (i) of that title (relating to explosive materials offenses)." *Id*. Relevant here, section 844(i) provides penalties for an offender who "maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C.A. § 844 (West). The listed offenses are considered aggravated felonies under the statute. Therefore, a conviction of such an offense should lead to "swift removal," regardless of whether the offense is a violation of federal, state, or foreign law. *Torres v. Lynch*, 136 S. Ct. 1619, 1626-27 (2016).

¶ 35 In *Torres*, the defendant was a lawful permanent resident of the United States who had immigrated to this country as a child. As an adult, he pleaded guilty to attempted arson under New York law, and seven years later, immigration officials discovered his conviction. They initiated proceedings to remove the defendant from the country. Defendant applied for cancellation of the removal, but an immigration judge found that he was ineligible for discretionary relief because his arson conviction qualified as an aggravated felony. *Id.* at 1623-24.

¶ 36 The defendant was convicted under New York law that prohibited " 'intentionally damag[ing],' or attempting to damage, 'a building or motor vehicle by starting a fire or causing an explosion.' " *Id*. at 1624. The defendant agreed that New York's arson law matched the offense listed in section 844(i), except for the interstate commerce element in the federal statute. *Id*. at 1634. The United States Supreme Court found, however, that the offenses were essentially the same when determining whether the defendant's attempted arson conviction in New York "counts as an aggravated felony under § 1101(a)(43)." *Id*. at 1634. The Court affirmed the judgment that the defendant was ineligible for relief because he was convicted of an aggravated felony. *Id*.

¶ 37 Section 20-1 of the Criminal Code of 2012, similar to the New York law in *Torres*, provides that one "commits arson when, by means of fire or explosive, he or she knowingly *** [d]amages any real property, or any personal property having a value of $150 or more." 720 ILCS 5/20-1 (West 2022). Defendant in this case pleaded guilty to attempted arson under this provision. This offense is listed as an aggravated felony under the Immigration and Nationality Act and, as such, a conviction of attempted arson renders the offender "deportable." See *Torres*, 136 S. Ct. at 1623. Whether attempted arson is an aggravated felony for immigration purposes is clear and straightforward, in contrast to the burglary offense discussed in *Valdez* and *Unzueta*.

¶ 38 Defendant's conviction of attempted arson rendered him swiftly removable under federal law. *Torres*, 136 S. Ct. at 1626-27. Accordingly, the trial court's admonishment that "a conviction of the offense for which you have been charged *may* have the consequences of deportation" did not convey the same information defendant should have received from his counsel prior to pleading guilty. See *Valdez*, 2016 IL 119860, ¶ 32. It is, at the very least, arguable that the trial court's admonishment did not cure the prejudice resulting from counsel's failure to inform defendant of the immigration consequences of his plea.

¶ 39 It is also significant that defendant's petition was at the first stage of postconviction proceedings. *Valdez* was not a postconviction case. *Unzueta*, and another case cited by the State, *People v. Garcia-Rocha*, 2017 IL App (3d) 140754, were decided at the second stage. At the second stage of postconviction proceedings, the petitioner must " 'demonstrate' or 'prove' ineffective assistance by 'showing' that counsel's performance was deficient and that it prejudiced the defense." *People v. Tate*, 2012 IL 112214, ¶ 19. However, a "more lenient formulation applies at the first stage." *Id*. Defendant need only allege that it is *arguable* he was prejudiced by counsel's

deficient performance. (Emphasis added.) *Id.* For all of the reasons already discussed, defendant met this low threshold.

¶ 40                                    III. CONCLUSION

¶ 41    For the foregoing reasons, we find that the allegations in defendant's petition, taken as true and liberally construed, presented a gist of a constitutional claim that plea counsel arguably provided ineffective assistance, and that defendant was arguably prejudiced by counsel's deficient performance. Therefore, the circuit court erred in dismissing the petition as frivolous and patently without merit. We reverse the judgment of the circuit court and remand the cause for second-stage proceedings under the Act.

¶ 42    Reversed and remanded.