NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200124-U

NO. 4-20-0124

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 24, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| MICAH J. HOPKINS, | ) | No. 14CF862 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

_____

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding remand *Krankel* counsel did not provide
            ineffective assistance.

¶ 2        Following an April 2015 trial, a jury found defendant, Micah J. Hopkins, guilty of

(1) unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2014)) and (2) first

degree murder where, during the commission of the offense of first degree murder, defendant

personally discharged a firearm (720 ILCS 5/9-1(a)(1), (a)(2) (West 2014)).  In May 2015, the

trial court found the conviction for unlawful possession of a weapon by a felon merged into the

first degree murder conviction and sentenced defendant to a prison term of 45 years plus a 20-

year firearm enhancement for a total of 65 years' imprisonment.

¶ 3        Following sentencing, defendant filed a *pro se* motion for a new trial, alleging

ineffective assistance of trial counsel.  Defendant's trial counsel, Bruce Ratcliffe, filed a motion

to reconsider sentence. In June 2015, the trial court appointed new counsel, Edwin Piraino, pursuant to *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), to represent defendant on his posttrial motions. In November 2015, Piraino filed an amended motion for a new trial, alleging ineffective assistance of trial counsel. Subsequently, the trial court denied defendant's amended motion for a new trial and his motion to reconsider sentence.

¶ 4        On direct appeal, defendant argued (1) Piraino operated under a *per se* conflict of interest while representing him in posttrial matters because Piraino previously represented the victim and (2) defendant's conviction should be reduced to second degree murder where the evidence demonstrated that he unreasonably believed he was acting in self-defense. This court affirmed defendant's conviction but remanded for an evidentiary hearing to determine whether Piraino had a *per se* conflict of interest. *People v. Hopkins*, 2019 IL App (4th) 160573-U.

¶ 5        On remand, the parties stipulated Piraino previously represented the victim. Based on the stipulation, the trial court found Piraino's representation of defendant created a *per se* conflict of interest. The court appointed new counsel, George Vargas, to represent defendant. Vargas filed a second amended motion for a new trial, alleging multiple claims of ineffective assistance of trial counsel and a second amended motion to reconsider sentence. After a *Krankel* hearing on defendant's second amended motion for a new trial, the court denied both defendant's second amended motion for a new trial and second amended motion to reconsider sentence.

¶ 6        Defendant appeals, arguing ineffective assistance of remand *Krankel* counsel Vargas for failing to provide necessary evidentiary support for defendant's ineffective assistance of trial counsel claims in his second amended motion for a new trial or present testimony at the hearing to support his claims. We affirm.

¶ 7                                    I. BACKGROUND

¶ 8                                A. Defendant's Jury Trial

¶ 9           In June 2014, the State charged defendant with (1) aggravated discharge of a

firearm (720 ILCS 5/24-1.2(a)(2) (West 2014)) for discharging a weapon in the direction of

Cortlyn Hill; (2) aggravated unlawful possession of a firearm by a felon (720 ILCS 5/24-1.1(a)

(West 2014)); and (3) first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2014)), alleging

defendant personally discharged a firearm causing the death of Allen Redding.  The charges

arose from a shooting that occurred on June 24, 2014, on Hedge Road in Champaign, Illinois.

¶ 10          In April 2015, the matter proceeded to a jury trial.  We summarized the evidence

presented at trial in our order on direct appeal.  See *People v. Hopkins*, 2019 IL App (4th)

160573-U.  At the close of trial, the jury found defendant guilty of unlawful possession of a

weapon by a felon and first degree murder, also finding that defendant, during the commission of

the first degree murder, personally discharged a firearm.  In May 2015, the trial court found the

conviction for unlawful possession of a weapon by a felon merged into the first degree murder

conviction and sentenced defendant to a prison term of 45 years plus a 20-year firearm

enhancement for a total of 65 years' imprisonment.

¶ 11          On May 21, 2015, defendant filed a *pro se* motion for a new trial, alleging, in

relevant part, ineffective assistance of trial counsel where counsel "did not introduce evidence

[defendant] knew to be material to the case.  Namely [tele]phone and text records."  On May 29,

2015, trial counsel Ratcliffe filed a motion to reconsider sentence.

¶ 12          In June 2015, the trial court appointed new counsel, Piraino, to represent

defendant on his posttrial motions.  In November 2015, Piraino filed an amended motion for a

new trial, alleging, in relevant part, ineffective assistance of trial counsel where "counsel failed

to introduce material [tele]phone and text records which corroborated [d]efendant's testimony and attacked the State's portrayal of the events leading up to the conflict." In June 2016, the trial court held a hearing and denied the amended motion for a new trial finding effective assistance of trial counsel. In July 2016, the court denied defendant's previously filed motion to reconsider sentence.

¶ 13                               B. Defendant's First Appeal

¶ 14         On direct appeal, defendant argued (1) Piraino operated under a *per se* conflict of interest while representing him in posttrial matters because Piraino previously represented the victim, Redding, and (2) defendant's conviction should be reduced to second degree murder where the evidence demonstrated that he unreasonably believed he was acting in self-defense. This court affirmed defendant's conviction but remanded for an evidentiary hearing to determine whether Piraino had a *per se* conflict of interest. *People v. Hopkins*, 2019 IL App (4th) 160573-U, ¶¶ 52, 63.

¶ 15                               C. The Proceedings on Remand

¶ 16                                   1. *Per Se Conflict*

¶ 17         On remand, the parties stipulated Piraino previously represented Redding in Champaign County case Nos. 08-CF-1353 and 08-CF-1651. Subsequently, in a June 2019 written order, the trial court found Piraino's representation of defendant created a *per se* conflict of interest where Piraino previously represented the victim. The court appointed new counsel, Vargas, to represent defendant.

¶ 18                               2. *Defendant's Second Amended Motions*

- 4 -

¶ 19    In August 2019, Vargas filed a second amended motion for a new trial, alleging multiple claims of ineffective assistance of trial counsel.  In relevant part, Vargas argued as follows:

"13.  That trial counsel failed to present evidence on [d]efendant's behalf.  Namely [d]efendant requested that trial counsel subpoena Devon Craig and Paul Craig as witnesses.  That trial counsel failed to attempt to interview, let alone subpoena either of these individuals.  Furthermore, trial counsel advised [d]efendant that since he would be taking the stand that the [*sic*] did not need to call any witnesses.

14.  That trial counsel failed to subpoena text message communications and cell phone records between [d]efendant and Allen Redding which would have shown Allen Redding's animus towards [d]efendant on the day of the shooting."

Vargas also filed a second motion to reconsider sentence, alleging defendant's sentence was excessive and "[a] lesser sentence would achieve the remedial goals and still be adequate punishment."

¶ 20    In October 2019, the State filed a response to defendant's second amended motion for a new trial.  The State argued defendant's ineffective assistance of trial counsel claims failed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  In relevant part, the State argued defendant did not provide an offer of proof explaining the Craig brothers' anticipated testimony and how their testimony would support defendant's defense.  Moreover, the State argued both Devon Craig and Paul Craig had lengthy criminal records and were

charged with felonies related to the facts of this case. Defendant failed to provide any evidence to show the brothers were willing to testify on his behalf. Further, the State argued defendant's motion failed to provide the context of the test messages between defendant and Redding on the day of the shooting and the motion was not supported by "affidavit, evidence, or even a sufficiently detailed proffer." Defendant also failed to provide evidence that he informed his trial counsel of the text messages prior to trial.

¶ 21                                              3. Krankel *Hearing*

¶ 22        In January 2020, the trial court held a *Krankel* hearing on defendant's second amended motion for a new trial. At the hearing, both defendant and Ratcliffe testified to the claims of ineffective assistance of trial counsel. We have summarized only the evidence necessary for the disposition of this appeal.

¶ 23                                              a. Defendant

¶ 24        Defendant testified that in preparation for trial, he asked Ratcliffe to subpoena Devon and Paul Craig but Ratcliffe "told me that he wouldn't contact him, and also that he didn't feel like they, they, they would be credible witnesses." Defendant acknowledged both Devon and Paul Craig were also charged with crimes in relation to this case. Defendant also stated he asked Ratcliffe to subpoena his cell phone records and text messages. Defendant believed his text messages leading up to the shooting would be helpful to his case at trial. Defendant testified,

> "[Ratcliffe] specifically told me that the state's attorney
> would have the records, and if they chose to use them, then we
> would—I don't know what strategy he was coming up with, but he
> said the state's attorney should have had the records, and if they

bring them up, then he'll try to bounce off of that. But I'm like

why, why we don't have 'em, you know what I mean?"

Ratcliffe never presented to defendant any cell phone records or text message records.

¶ 25                                    b.  Ratcliffe

¶ 26        Ratcliffe testified he represented defendant at trial. When asked if he attempted to contact the Craig brothers prior to trial, Ratcliffe stated, "Well I couldn't talk to the Craig's because they were—had charges against them and their lawyers wouldn't let me talk to them." Ratcliffe did not recall prior to trial defendant asking him to retrieve text messages. Specifically, Ratcliffe testified,

"And had it occurred during trial prep, it wouldn't have

been used because it wouldn't have been relevant and I—it

couldn't have been admitted. It—if it showed state of mind, which

is what I'm gathering it would have shown, it would only have

shown a state of mind previous to the moment of the crime taking

place, and when it comes to that—when it comes to second degree

murder or self-defense, it is that moment and only that moment

that really matters."

¶ 27        On cross-examination, Ratcliffe testified defendant asked him prior to trial to contact the Craig brothers. Ratcliffe contacted the Craig brothers' attorney and asked to speak with the brothers prior to trial, but their counsel did not let Ratcliffe speak to the brothers. Ratcliffe testified he did not "cut any subpoenas for either one of those individuals." When asked, "Did anything prevent you from cutting the subpoena?" Ratcliffe responded, "Yes."

¶ 28 Ratcliffe testified at no point prior to trial did he have possession of defendant's cell phone records or text message records. Ratcliffe never subpoenaed defendant's cell phone or text message records.

¶ 29                                c. Trial Court's Rulings

¶ 30 The trial court denied defendant's second amended motion for a new trial. As to defendant's claim trial counsel was ineffective for not subpoenaing Devon and Paul Craig as witnesses, the court stated as follows:

> "With respect [to] not calling Devon and Paul Craig, Mr.
> Ratcliffe has given his response, but I would note, even if he did
> not, there is no sufficient evidence presented or raised to even
> bring the claim to the court's attention because there are no
> affidavits that have been attached as to what those witnesses would
> testify to. ***. Here there have been no such representations as to
> what either Devon or Paul Craig would have testified to or how
> their testimony would have influenced the trial or affected the trier
> of fact's determination in this case, and the defendant's failure to
> produce even a suggestion as to what the evidence would be
> defeats any claim that it was ineffective not to call them. He has
> the burden of showing the witnesses would have come forward and
> at least an outline or summation or the gist of what they would
> have testified to and how that would have been exculpatory or
> helpful to the defense in terms of trial or the sentencing outcome
> and he has not done so.

I would also note Mr. Ratcliffe gave his reasons for not calling them, which again falls within the description of strategic determinations and also sound ones because he talked about the fact that they were facing pending charges, refused to talk to him, the fact that they took the Fifth would not come out before a trier of fact, and he was unable to even talk to them because they were represented by attorneys facing their own criminal charges with criminal involvement.

So given all those factors, there's nothing there that would support a claim of ineffectiveness for not calling these individuals based on both a strategic and tactical determination and the fact that there's nothing to suggest what they would have testified to."

¶ 31    As to defendant's claim trial counsel was ineffective for not subpoenaing his cell phone or text message records, the court stated as follows:

"Finally, with respect to the cell[ular] [tele]phone records, there's again the same analogy that the court would draw to the claim that witnesses were not called. This isn't new evidence. These are all things that were available to Mr. Craig [*sic*]. So then it falls under the analysis of ineffectiveness for not presenting that. I have nothing in front of me from any of these pleadings or presentations to suggest what was in those cell phone records. Other than they should have been presented, to this date there's no representation or even a suggestion as to what was in them that

would be helpful to the defendant, how that would be relevant to the issues in the case at hand or in any way assist the defendant in presenting his defense, or even of assistance at sentencing. There's simply no information about what the cell phone records would have contained that would have been admissible or how that would have been again helpful to the defendant in presenting his defense. Without that, the court cannot make any determinations as to whether or not that should have been presented. And Mr. Ratcliffe also indicated that that was something that he was not made aware of and we're simply in a situation where there's nothing in front of us to be able to even evaluate that. And the burden is on the defendant to point to what could have been used from those statements that was not and make a more definitive showing as to how that was ineffective not to present that evidence. So again this would also fall within the ambient of what's a tactical determination or strategic determination, but without even knowing what's in it or that it was something that existed, it would not be helpful at all to the defendant, so he has not met even that requisite showing to allow him to go forward and have the court analyze whether or not it should have been presented 'cause we don't even know what it was as we sit here today, and that burden again is on the defendant to make the initial showing.

I do find all of these determinations fall within the ambient of tactical and strategic determination, that is not something that would be normally within the ambient of *Strickland,* and in reviewing these determinations for the reasonableness of them clearly does not rise to the level where it would support a claim of ineffectiveness."

¶ 32    The court also denied defendant's second amended motion to reconsider sentence.

¶ 33    This appeal followed.

¶ 34                                    II. ANALYSIS

¶ 35    Defendant appeals, arguing ineffective assistance of remand *Krankel* counsel Vargas for failing to provide necessary evidentiary support for his ineffective assistance of trial counsel claims in his second amended motion for a new trial.  Specifically, in the second amended motion for a new trial, *Krankel* counsel Vargas argued defendant's trial counsel was ineffective where he failed to (1) interview or subpoena Devon Craig or Paul Craig and (2) subpoena text messages between defendant and the victim that would have shown the victim's animus on the day of the shooting.  Defendant argues *Krankel* counsel Vargas failed to attach exhibits to the motion or present testimony at the hearing to support his two claims.

¶ 36    Courts have noted the *Krankel* inquiry involves two distinct stages.  *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 43, 83 N.E.3d 584.  First, the trial court examines the factual basis of the defendant's *pro se* claims of ineffective assistance of trial counsel, and if the facts indicate possible neglect on trial counsel's part, the court appoints new counsel.  *Downs*, 2017 IL App (2d) 121156-C, ¶ 43.  Following the appointment of counsel (*Krankel* counsel), the case proceeds to the second *Krankel* stage, which consists of an adversarial and evidentiary

- 11 -

hearing on the defendant's claims and during which *Krankel* counsel represents the defendant. *Id.* At the second-stage hearing, *Krankel* counsel must independently review the defendant's *pro se* ineffective-assistance allegations and then must present any nonfrivolous claims to the trial court. *Id.* ¶¶ 49-50, 54.

¶ 37 Generally, claims of ineffective assistance of counsel are considered under the familiar standard established in *Strickland*, 466 U.S. 668 (1984). *People v. Cherry*, 2016 IL 118728, ¶ 24, 63 N.E.3d 871. This includes claims that *Krankel* counsel provided ineffective assistance. *Cherry*, 2016 IL 118728, ¶¶ 24-30. Here, remand *Krankel* counsel was appointed to represent defendant on a posttrial motion. "A posttrial motion has long been held to be a critical part of the criminal proceeding, and, as a result, the defendant is still entitled to constitutionally effective assistance of counsel." *Downs*, 2017 IL App (2d) 121156-C, ¶ 41.

¶ 38 To prevail on a claim of ineffective assistance under *Strickland*, a defendant must show both that: (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *Cherry*, 2016 IL 118728, ¶ 24. To establish deficient performance, the defendant must show "counsel's performance 'fell below an objective standard of reasonableness.' " *People v. Valdez*, 2016 IL 119860, ¶ 14, 67 N.E.3d 233 (quoting *Strickland*, 466 U.S. at 688). Prejudice is established when a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Evans*, 209 Ill. 2d 194, 219-20, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 694). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18, 939 N.E.2d 310, 319 (2010).

¶ 39 Defendant argues *Krankel* counsel was obligated to "sift through the defendant's *pro se* allegations to determine if any are nonfrivolous and then must present those nonfrivolous claims to the trial court during the second-stage adversarial hearing." See *Downs*, 2017 IL App (2d) 121156-C, ¶ 50. If there was no evidence to support the claims, appointed *Krankel* counsel had an obligation not to include the claims in his second amended motion or argue them at the second-stage hearing. *Downs*, 2017 IL App (2d) 121156-C, ¶ 48. Therefore, defendant argues where his *Krankel* counsel incorporated his *pro se* claims in the second amended motion for a new trial, he needed to present the claims with evidentiary support. Defendant asserts *Krankel* counsel failed to provide evidentiary support and thus, his representation fell below an objective standard of reasonableness.

¶ 40 Defendant analogizes appointed *Krankel* counsel's performance to postconviction case law. Defendant asserts that in the postconviction context, Illinois courts have found that appointed counsel does not provide reasonable assistance in compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) by simply restating a *pro se* claim in an amended petition without investigating the claim and, if possible, attaching supporting documentation. See *People v. Nitz*, 2011 IL App (2d) 100031, ¶¶ 18-19, 959 N.E.2d 1258; *People v. Treadway*, 245 Ill. App. 3d 1023, 1026-27, 615 N.E.2d 887, 890-91 (1993); and *People v. Turner*, 187 Ill. 2d 406, 416-17, 719 N.E.2d 725, 730-31 (1999).

¶ 41 Therefore, defendant asserts, here, where appointed *Krankel* counsel failed to support the claims of ineffective assistance of trial counsel in the second amended motion for a new trial, his performance would be deemed insufficient representation under the postconviction standard of reasonable assistance. Defendant argues because he was entitled to constitutionally-effective assistance of *Krankel* counsel, a higher standard than the statutory right

- 13 -

to reasonable assistance that applies in the postconviction context and that, because counsel adopted but failed to properly support his claims with evidentiary support, *Krankel* counsel should be deemed to have provided ineffective assistance.

¶ 42   We find the standard governing counsel's performance in postconviction proceedings is not applicable to defendant's case. Defendant fails to cite any relevant authority to support his argument that appointed *Krankel* counsel must attach evidentiary support for each of a defendant's ineffective-assistance claims that counsel deems to be nonfrivolous. Further, we note, in the postconviction context, unlike here, there is a statutory requirement to provide evidentiary support or to explain its absence. See 725 ILCS 5/122-2 (West 2018) ("The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached.").

¶ 43   Moreover, we conclude *Krankel* counsel Vargas's representation of defendant did not fall below an objective standard of reasonableness. In the second amended motion for a new trial, *Krankel* counsel Vargas advanced two of defendant's *pro se* claims which asserted defendant's trial counsel was ineffective where he failed to (1) interview or subpoena Devon Craig or Paul Craig and (2) subpoena text messages between defendant and the victim that would have shown the victim's animus on the day of the shooting.

¶ 44   At the *Krankel* hearing, Vargas questioned defendant and trial counsel Ratcliffe about the allegations in the second amended motion for a new trial. As to defendant's first claim, Ratcliffe testified he attempted to investigate the Craig brothers' potential testimony but their attorneys denied Ratcliffe access to the brothers. Ratcliffe also testified he was precluded from subpoenaing the Craig brothers. As to defendant's second claim, Ratcliffe testified he did not recall defendant asking him to retrieve text messages between him and Redding from the day

of the shooting. Ratcliffe explained even if defendant would have asked him to examine the text message records, the records would have been irrelevant. Ratcliffe never knew the contents of the text messages between defendant and Redding.

¶ 45　　　　After hearing testimony from Ratcliffe and defendant, the trial court denied defendant's second amended motion for a new trial, finding Ratcliffe did not provide ineffective assistance of trial counsel where the court found the determinations fell "within the ambient of tactical and strategic determination." Specifically, the court stated Ratcliffe "gave his reasons for not calling" the Craig brothers and found those reasons fell "within the description of strategic determinations and also sound ones because he talked about the fact that they were facing pending charges, refused to talk to him, [and] the fact that they took the Fifth would not come out before a trier of fact[.]" As to the text messages, the court acknowledged defendant failed to make Ratcliffe aware of the contents of the text messages before trial. Specifically, the court found defendant failed "to point to what could have been used from those statements[.]" The court again ruled such would fall under "the ambient of what's a tactical determination or strategic determination[.]" Ultimately, the court found defendant failed to produce even a suggestion as to what the evidence would show with regard to the Craig brothers' testimony and the contexts of the text messages to support a claim of ineffective assistance of trial counsel.

¶ 46　　　　Based on the record, we find *Krankel* counsel Vargas's performance was not deficient. *Krankel* counsel Vargas advanced defendant's *pro se* claims in a second amended motion for a new trial. At the *Krankel* hearing, Vargas subjected trial counsel's conduct to meaningful adversarial testing where Vargas questioned Ratcliffe about his decision to not call the Craig brothers or subpoena defendant's text messages. Further, Vargas called defendant to

- 15 -

testify about his claims. Thus, there was no total failure of representation by *Krankel* counsel. See *Cherry*, 2016 IL 118728, ¶ 29.

¶ 47        In *Cherry*, 2016 IL 118728, ¶ 29, appointed *Krankel* counsel orally argued the defendant's *pro se* claims of ineffective assistance of trial counsel. On appeal, the defendant argued "that appointed counsel should have done more at the *Krankel* hearing to develop and advance [the] defendant's *pro se* claims, such as introduce evidence or call relevant witnesses." *Id.* The court found, even if true, "appointed counsel's failure to introduce evidence or testimony in support of [the] defendant's *pro se* ineffective assistance claims hardly rises to the level of 'entirely fail[ing] to subject the prosecutor's case to meaningful adversarial testing.' " *Id.* (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)). Rather, if established, "such failure would fall squarely in the category of poor representation, not 'no representation at all.' " *Id.* (quoting *People v. Caballero*, 126 Ill. 2d 248, 267, 533 N.E.2d 1089. 1095 (1989)).

¶ 48        Given that we conclude that *Krankel* counsel's performance was not deficient, we need not address *Strickland*'s prejudice prong. See *Clendenin*, 238 Ill. 2d at 317-18. However, even if *Krankel* counsel's performance was deficient, counsel's deficient performance did not prejudice defendant. Defendant cannot establish that the result of the *Krankel* hearing would have been different had Vargas provided evidentiary support for defendant's claims. Vargas questioned defendant and Ratcliffe at the hearing about the claims in the posttrial motion. Defendant failed to allege the contents of the text messages between him and Redding on the day of the shooting and how they would help his case. Notably, Ratcliffe testified he had no recollection of any occurrence where defendant made him aware of the text messages. Ratcliffe indicated he tried to contact the Craig brothers but their attorneys would not allow Ratcliffe to

talk with them. Also, given the Craig brothers were also charged in the case, they faced serious questions regarding their credibility.

¶ 49        Based on the evidence, we find *Krankel* counsel Vargas did not provide ineffective assistance on remand. Accordingly, we affirm the trial court's judgment.

¶ 50                         III. CONCLUSION

¶ 51        For the reasons stated, we affirm the trial court's judgment.

¶ 52        Affirmed.